Robert H. BRADLEY, Appellant,

v.

Daniel L. KLAES, Lynda K. Klaes,
Ann Cunningham, and Tom
Zaczkowski, Appellees.

No. S–12178.

Supreme Court of Alaska.

March 28, 2008.

Robert H. Bradley, pro se, Fairbanks.

Joseph W. Sheehan, Law Offices of Joseph W. Sheehan, Fairbanks, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

The main question in this appeal is whether the superior court properly granted summary judgment establishing user fees for a taxiway and private airstrip. We conclude that summary judgment was improperly granted on this issue because there was a genuine issue of material fact as to what the appropriate fee should be.

## I. FACTS AND PROCEEDINGS

On April 20, 2004, the owners of three parcels adjacent to the Bradley Sky Ranch Subdivision in North Pole filed suit against the owners of the subdivision. The plaintiffs, Daniel and Lynda Klaes, Ann Cunningham, and Tom Zaczkowski, alleged that each owned an easement granting access to and use of an airstrip located on the subdivision property. They alleged that they had fully paid the annual user fee for use and access to the airstrip of $300 to James or Leslie Bradley and that Robert Bradley had demanded additional fees and interfered with their right of access to the airstrip. The plaintiffs sought an order confirming their rights to use the airstrip and a determination that the fees that they had been paying were reasonable. They also sought a preliminary and permanent injunction prohibiting Robert Bradley from making additional demands for payment and from interfering with their right of access to the airstrip.

On May 14, 2004, Robert Bradley, represented by counsel, filed an answer and counterclaim admitting that he had attempted to block plaintiffs' access across his property to the airstrip and that he had demanded that plaintiffs pay him fees as a condition of obtaining access to the airstrip. Robert counterclaimed for unpaid fees and damages in an unspecified amount. Robert also filed a memorandum in opposition to the motion for preliminary injunction.

In the memorandum Robert admitted that the plaintiffs have a taxiway easement to the

airstrip that they may use if they pay a reasonable fee. He contended that the easement is limited to noncommercial uses and is to last only as long as the airstrip is used as an airstrip. Robert explained that he had been in litigation with his brothers James and Leslie concerning the ownership and control of the subdivision and that under a settlement in that litigation James and Leslie would own the airstrip while Robert would own portions of the subdivision on which the plaintiffs' taxiway easement was located. Robert stated that under the settlement agreement user fees were payable to him, that this had been communicated to the plaintiffs in November 2003, and that nonetheless plaintiffs made their payments to Leslie.

The plaintiffs filed a reply in support of their motion for preliminary injunction on May 24, 2004. The reply indicated that Robert was demanding $175 per month per aircraft and asserted that this fee was unreasonable. The reply also noted that the taxiway that the plaintiffs use to gain access to the airstrip is maintained by the plaintiffs rather than Robert and that the easement agreement provides for a fee for the use of the runway and does not require the payment of a separate access fee. The reply acknowledged three areas of dispute: (1) what fee is reasonable for access and use of the airstrip; (2) whether the fee should have been paid to Robert; and (3) whether the Klaeses were involved in commercial operations.

Concerning the amount of the fee, the plaintiffs argued that historically the fee had been $300 per user per year regardless of the number of aircraft each user stored on the user's property. The per-user rather than per-aircraft issue was important because, according to his affidavit, Daniel Klaes owns five aircraft and at various times throughout the year all of these aircraft could be on his property. Daniel Klaes indicated that he had been paying $300 for the use of the airstrip for more than ten years. Tom Zaczkowski also filed an affidavit indicating that he owned two aircraft and that he too had been paying $300 for access and use of the airstrip for the past ten years.

With respect to who should receive the fees, the plaintiffs claimed that they did not receive notice that Robert had the right to receive the fees until April 30, 2004. Regarding the Klaeses' commercial operations, the reply acknowledged that the Klaeses own a corporation, Bettles Lodge, Inc., to which they lease their aircraft. Bettles Lodge, Inc., is, in part, an air service, but it operates out of Bettles, not out of the Klaeses' North Pole property. Nonetheless, the reply confirms that during the winter months the aircraft are parked on the Klaeses' property and that all the aircraft return there for maintenance.

A hearing on the motion for preliminary injunction was held on May 27, 2004. At the close of the hearing the court granted a preliminary injunction. The injunction enjoined Robert from interfering with the plaintiffs' access to the airstrip and also enjoined him from demanding or collecting any fees from the plaintiffs in conjunction with their use of the taxiway and airstrip.

Robert's attorney withdrew on November 30, 2004, and Robert thereafter represented himself. On May 5, 2005, Robert moved to dismiss the case for want of prosecution relying on Civil Rule 41(e). Robert relied on Civil Rule 41(e)(1)(B) which provides that a case may be dismissed for want of prosecution if "the case has been pending for more than one year and no trial or mandatory pretrial scheduling conference has been scheduled or held." Robert's motion to dismiss was set for oral argument to be held on June 27, 2005.

On June 17, 2005, the plaintiffs moved for summary judgment. They requested an order making the preliminary injunction permanent and confirming that the present user fee of $300 per year or $25 per month is reasonable. In support of the motion the plaintiffs quoted the language of the easement contained in the deeds to their property. The easement language grants plaintiffs "a non-exclusive right of private use ... as an easement ... of the existing private airstrip ... including the right of access thereto from the herein conveyed real estate ..." subject to a right in "the owners, for themselves and their heirs and assigns ... to hereafter levy or impose reasonable landing

or use fees upon any user of said airstrip, and as a condition of the continuing use of the same . . . ."

Plaintiffs argued that although Robert had the right to collect user fees he did not have the right to set them. Plaintiffs relied on the order of settlement in the case between the Bradley brothers for this assertion. The paragraph on which they relied states: "Other landowners who may have rights of access to the airstrip will pay user fees (that the owners of the airport may have previously had the right to collect) to Robert Bradley." [1] The plaintiffs also argued that Robert's attempt to charge a fee of $175 per aircraft per month was unreasonable. They cited charges made by other airstrips in the area, none of which exceeded $40 per month.

The plaintiffs each submitted an affidavit in support of the motion for summary judgment. Each affidavit confirmed that another private airstrip in the area charged $30 per month per lot, a second charged $35 per month per lot, and Fairbanks International Airport charged $40 per month for a standard tie down. The plaintiffs also supported their motion with affidavits of James and Leslie Bradley. They affined, identically, that the $25 per month user fee "is more than reasonable, without regard to the number of aircraft, given the limited services provided." Each stated, "I am aware generally that the fee charged . . . is consistent with the fee being charged by other local privately owned airstrips."

On the same day that they filed their motion for summary judgment, the plaintiffs stipulated with James and Leslie Bradley to dismiss them as defendants. They were dismissed on August 19, 2005.

On June 27, 2005, Robert Bradley moved pursuant to Civil Rule 56(f) to extend the time to respond to the motion for summary judgment so that he could conduct discovery in order to obtain information needed to oppose the motion for summary judgment. On July 11, 2005, the plaintiffs filed their nonopposition to Robert's Rule 56(f) motion to extend, suggesting that Robert be allowed an additional thirty days within which to conduct discovery and file his opposition. On July 22, 2005, the court granted Robert's motion for additional time so that he could conduct discovery, extending the time for opposing the plaintiffs' motion for summary judgment for thirty days. The order of July 22 was mailed to the parties on July 28. Meanwhile, on July 25, 2005, Robert responded to the plaintiffs' response to his Rule 56(f) motion. He contended in a pleading entitled "Reply to Plaintiffs' Partial Objection to Limited Discovery" that thirty days was not enough time for needed discovery and requested an extension of six months.

On August 12, 2005, the plaintiffs filed a pleading entitled "Reply in Support of Motion for Summary Judgment." This pleading argued that the extension of time granted by the court for Robert to answer the motion for summary judgment expired on August 4, 2005, even though the court only granted the extension on July 22 and mailed it on July 28. The plaintiffs reasoned that the normal time for the response to the motion for summary judgment would have been on or before July 5, 2005, and thirty days from that date was August 4, 2005.

On August 19, 2005, Superior Court Judge Charles R. Pengilly granted the plaintiffs' motion for summary judgment, noting that it had not been opposed. The order confirmed that the plaintiffs have the right to use the taxiway easement leading from their property to the airstrip and that $25 per month per lot as a user fee was reasonable and should be the fee charged by Robert Bradley. The court ordered that the preliminary injunction would become permanent and that the $25 per month per lot user fee should be paid to Robert. On the same day that summary judgment was granted the court signed a judgment in favor of the plaintiffs in accordance with the order granting summary judgment.

On September 6, 2005, Robert Bradley sought reconsideration. Robert argued in his motion for reconsideration that his request for a six-month extension was either overlooked or ignored. Robert's motion for

---

1. The order of settlement was signed by Superior Court Judge Randy M. Olsen on March 19, 2004.

reconsideration was not ruled upon and was thus denied by operation of law thirty days after it was made.[2] Robert made a Rule 60(b) motion for relief from judgment on October 27, 2005. This motion was denied by Judge Pengilly on November 30, 2005.

## II. DISCUSSION

On appeal Robert presents six arguments captioned[3] as follows:

(1) whether there was error by the lower court in making its decision to let the injunction stand;

(2) whether the court erred in not granting more than thirty days to do discovery on a summary judgment motion;

(3) whether a dismissal for want of prosecution should have been granted to defendant Robert Bradley since this case sat stagnant and there was no calendaring of claim and no prehearing on discovery;

(4) whether the plaintiff appellees interfered with property covenants for use of right of way to the airstrip;

(5) whether plaintiff appellees can set their own pricing for use of right of way to the airstrip; and

(6) whether co-defendants James Bradley and Leslie Bradley can control right-of-way use of property controlled by Robert Bradley that was awarded to him in a prior proceeding.

Robert's first, second, and third contentions deal with pre-summary judgment rulings. We turn to them first.

### A. Was the Preliminary Injunction Properly Granted?

█ Robert in his first argument on appeal contends that the preliminary injunction should not have been granted. He argues that the plaintiffs did not show irreparable harm. The grant or denial of a preliminary injunction is ordinarily a matter within the discretion of the superior court.[4] The plain-

tiffs demonstrated that Robert had interfered and was threatening to continue to interfere with their right of access to the airstrip. Numerous cases hold that injunctive relief is available to protect easement rights.[5] Since plaintiffs' right of access was a legally protected property interest, injunctive relief to protect it was appropriate. Thus this argument lacks merit.

### B. Should an Extension Longer than Thirty Days Have Been Granted Under Civil Rule 56(f)?

█ The trial court granted Robert's Rule 56(f) request for additional time on July 22, 2005. Robert in his June 27, 2005 request for such relief did not identify any potential deponents but stated that he was "requesting an extension of time to take discovery, deposition, both video and written[,] and to obtain [affidavits] which will be used in my opposition to plaintiffs' motion for summary [judgment]." The plaintiffs filed a "Partial Objection and Non–Objection" to Robert's 56(f) motion. They noted that Robert had not done any discovery since the filing of the case, but did not oppose a reasonable extension so that Robert could obtain affidavits and discovery and prepare his opposition memorandum. They suggested that "thirty (30) days should be adequate" and also submitted a proposed order granting Rule 56(f) relief that stated that Robert "is granted thirty (30) days from date of this order within which to procure discovery, affidavits, and file his opposition" to the motion for summary judgment. The court, however, did not use the order submitted by the plaintiffs. Instead the court signed an order submitted by Robert and interlineated that the "date for opposition to Plaintiffs' Motion for Summary Judgment is extended 30 days." The court signed this order on July 22, and it was mailed by the clerk's office on July 28, 2005.

---

**2.** Alaska R. Civ. P. 77(k)(4).

**3.** We have slightly edited Robert's argument headings.

**4.** *Brandon v. Dep't of Corrections,* 865 P.2d 87, 88–89 (Alaska 1993).

**5.** *See, e.g., Stuart v. Whaler's Cove, Inc.,* 144 P.3d 467 (Alaska 2006); *McGill v. Wahl,* 839 P.2d 393 (Alaska 1992); 25 Am.Jur.2d, *Easements and Licenses* § 110 (2007).

After the plaintiffs filed their partial objection, Robert on July 25 responded that thirty days would not be enough time and asked for six months. This pleading did not specify whom Robert wished to depose or on what issue their depositions would be relevant, but Robert did indicate that some people he wished to depose "are out of town and won[']t be back for awhile." By the time Robert filed this pleading the court had already ruled and never revisited the subject. The question is whether the court erred in refusing to grant Robert an extension longer than thirty days.

> Civil Rule 56(f)
>
> permits a party opposing summary judgment to request additional time to gather and submit evidence to support the party's opposition.... [R]equests made under Rule 56(f) should be granted freely because [the rule] provides a safeguard against premature grants of summary judgment....
>
> ....
>
> [A] party must satisfy three requirements to receive a continuance under Rule 56(f): the party (1) must unambiguously request relief on those grounds, (2) must not have been dilatory during discovery, and (3) must provide adequate reasons why additional time is needed.[6]

Robert's July 25 request for additional time was unambiguous and thus he met the first of the stated grounds for Rule 56(f) relief. But Robert was dilatory with respect to discovery. We do not reach this conclusion because Robert failed to conduct discovery before the motion for summary judgment. No party took any action after the

preliminary injunction until Robert moved to dismiss on Civil Rule 41(e) grounds. His motion, in turn, appears to have prompted the plaintiffs to file the motion for summary judgment. But after the motion for summary judgment was filed and Robert realized that additional discovery was needed, he could have begun taking depositions within the thirty-eight-day period between the filing of the summary judgment motion and his July 25 request for a six-month delay.[7] During this period Robert was dilatory.

We also do not believe that Robert supplied adequate reasons why time in addition to the thirty-day extension was needed. He supplied neither the names of the witnesses whom he wished to depose (or from whom he wished to obtain affidavits) nor any verifying details as to who was unavailable, nor did he indicate the issues on which their testimony was thought to be germane. We conclude therefore that Robert has not supplied adequate reasons why additional time was needed. He thus failed to meet both the second and third requirements for Rule 56(f) relief. For these reasons we conclude that the court did not err in declining to grant more than a thirty-day extension under Civil Rule 56(f).[8]

### C. Should the Case Have Been Dismissed for Want of Prosecution?

■ Turning to Robert's third contention, whether a dismissal for want of prosecution should have been granted, Robert relies on Civil Rule 41(e)(1)(B), which permits dismissal for want of prosecution in a case that has been pending for more than one year where no trial or mandatory pretrial scheduling

---

6. *Hymes v. Deramus*, 119 P.3d 963, 965 (Alaska 2005) (quotations & citations omitted).

7. Even after the July 25 request Robert initiated no discovery.

8. We note that the plaintiffs in their "Reply in Support of Motion for Summary Judgment" filed August 12, 2005—which was simply a request that the court rule on their motion for summary judgment—calculated that the thirty-day extension granted by the court expired on August 4, 2005. This would be correct if the extension was directly tacked on to the original time for opposing the motion. It would not be correct if the intent of the court was to grant thirty days from

the July 22 date of the court's order. The court's order itself is ambiguous as to the date from which it was intended to run. The plaintiffs' interpretation is a defensible, if ungenerous, reading of the order. But we do not believe the ambiguity in the July 22 order was significant in the context of this case. Robert gave no indication that he would have filed an opposition to the motion for summary judgment within thirty days after July 22. His post-summary judgment pleadings—his motion to reconsider summary judgment of September 6, 2005, and his motion for 60(b) relief of October 27, 2005—do not suggest that Robert expected to file an opposition to the motion for summary judgment within the thirty-day period as so calculated.

conference has been scheduled or held. Under this rule when a case has been pending for more than a year and the conditions of subsection (1)(B) are met, the court (or the clerk of court) is not to dismiss the case automatically but must request a showing as to why the case should not be dismissed. Thus in response to Robert's motion to dismiss the court could have asked the plaintiffs to show cause why the case should not be dismissed. But this was not necessary because shortly after Robert made his motion to dismiss the plaintiffs moved for summary judgment. Once that motion was made it would have been an abuse of discretion to enter a Rule 41(e) dismissal.

### D. Was Summary Judgment Appropriate?

Robert's fourth and fifth arguments on appeal pertain to whether the court erred substantively in granting summary judgment for the plaintiffs.

 The rules governing our review of judgments based on the grant of summary judgment were recently expressed by this court in *Greywolf v. Carroll:*

> Summary judgment is granted if the pleadings, depositions, or other admissible evidence along with affidavits show that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. We review a grant of summary judgment de novo and in so doing draw all reasonable inferences in favor of the nonmoving party to determine whether the parties genuinely dispute any facts material to a viable legal theory and, if not, whether the undisputed facts entitle the movant to judgment as a matter of law.
>
> A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The movant has the burden of showing that there is an absence of a factual dispute on a material fact and that this absence of a dispute constitutes a failure of proof on an essential element. If a prima facie case is established by the mov-

ant, then the nonmoving party must set forth specific facts showing that admissible evidence could be produced that reasonably tends to dispute or contradict the moving party's evidence in order to demonstrate the existence of a dispute of material fact and prevent entry of summary judgment. Any admissible evidence in favor of the nonmoving party concerning a material fact is sufficient to render summary judgment inappropriate.[9]

As implied by the quoted language, when a summary judgment movant does not make a prima facie case showing the absence of a factual dispute on a material fact, it is error to grant summary judgment, and the grant of summary judgment may be reviewed on appeal even if the nonmoving party did not file opposition to the motion in the trial court:

> The moving party has the "entire burden" of proving that it is entitled to summary judgment. That is, unless the moving party points to undisputed facts or admissible evidence establishing a prima facie case entitling it to summary judgment as a matter of law, the opposing party has no obligation to produce evidence supporting its own position.[10]

 Robert's fourth argument complains that payments of the fees were made to his brothers James and Leslie. Prospectively, at least, this is not an issue because the judgment provides that each of the plaintiffs must pay Robert a user fee so long as they use the taxiway and airstrip. But there is an issue as to when the plaintiffs should have begun paying Robert user fees. The question of retrospective payments to Robert was not resolved by the judgment or the order granting summary judgment, nor was it addressed in the motion for summary judgment. The plaintiffs therefore have not carried their burden as summary judgment movants of showing an absence of a factual dispute on this point. Since they did not make a prima facie case as to this issue, Robert's lack of opposition to the motion for summary judgment does not preclude him

---

**9.** 151 P.3d 1234, 1240–41 (Alaska 2007) (quotations & citations omitted).

**10.** *B.R. v. State, Dep't of Corrections,* 144 P.3d 431, 433 (Alaska 2006) (citations omitted).

from raising the point on appeal.[11] On remand the court should determine the date after which user fees should have been paid by the plaintiffs to Robert. If the fees were not paid to Robert, he is entitled to judgment for them on his counterclaim.

■ In his fifth point on appeal Robert argues that the plaintiffs should not be able to set their own fees as distinct from the "rightful rent" that Robert seeks to charge. Fairly construed this argument raises the issue as to whether the court was correct in determining that the appropriate user fee for the taxiway and airstrip was $25 per month.

There is an underlying legal issue here, namely whether Robert rather than James and Leslie have the authority to set the user fee. The language of the settlement agreement between the brothers does not, as the plaintiffs contend, establish that Leslie and James have the authority to set the user fee. Absent extrinsic evidence and based solely on the language of the agreement, we believe that Robert rather than his brothers should have fee-setting authority. Otherwise, his brothers could substantially reduce the value of Robert's rights simply by setting the fees at low levels. Pending possible resolution of this question to the contrary on remand, we assume for the purposes of the discussion that follows that Robert has the right to set the fees.

Based on this assumption, and given that there is a range of fees that may be reasonable, Robert should have the right to charge fees at the top of the range. Robert, in other words, may charge the highest reasonable fee.

Much of the evidence submitted by the plaintiffs pertained to the question of whether $25 per month was a reasonable fee and did not address the issue of whether $25 per month was the highest reasonable fee. But both James and Leslie testified in affidavits

that the $25 fee "is more than reasonable, without regard to the number of aircraft, given the limited services provided." This testimony, if offered at trial by a live witness, would be admissible to establish that the highest reasonable fee was $25 per month. Nonetheless, there was other evidence in the record that when favorably construed toward Robert indicated a fee higher than $25 per month would be reasonable. We refer here to the plaintiffs' affidavits indicating that another private airstrip charges $30 per month per lot and a third charges $35 per month. Drawing reasonable inferences in favor of Robert from this evidence suffices, in our view, to establish a genuine issue of material fact as to whether $25 per month per lot is the highest reasonable fee that may be charged. As a result, the plaintiffs did not show the absence of a factual dispute on this issue. They thus did not establish a prima facie case entitling them to summary judgment as to the appropriate fee that Robert may charge.[12] The judgment on this point must therefore also be reversed.

### E. Can Robert's Claim Against His Brothers Be Raised in this Case?

■ Robert's sixth point on appeal is a claim that his brothers James and Leslie have unlawfully interfered with his property. But since Robert did not plead cross-claims against them this argument is not properly presented in this case.

## III. CONCLUSION

Summary judgment and judgment against Robert Bradley enjoining him from interfering with plaintiffs' use of their taxiway easement was appropriate and the court properly required the plaintiffs to pay a fee for the use of the taxiway easement and the airstrip to Robert prospectively. But the court did not determine the prejudgment date from

---

11. *Id.*

12. We note that the permanent injunction order from which Robert appeals established the amount to be paid by the plaintiffs "so long as they access and use the Bradley Sky Ranch Airstrip." However, the highest reasonable fee that Robert can charge probably will increase as time passes and the market changes. A permanent

injunction setting the highest reasonable fee Robert can charge should not be read to prohibit Robert from raising the fee in the future with prior court approval. Further, because it is unlikely that today's highest reasonable fee will remain so indefinitely, the superior court on remand should impose a reasonable time deadline after which the injunction will expire.

which such fees should have been paid to Robert and the court erred in determining on summary judgment that the user fee should be $25 per month. The judgment therefore must be vacated with respect to these issues and further proceedings on remand will be required in order to determine them.

For the reasons stated the judgment is AFFIRMED IN PART, REVERSED IN PART, and this case is REMANDED for further proceedings consistent with this opinion.

BRYNER, Justice, not participating.