NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

LARRY MIKELL,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-14044
Trial Court No. 3AN-21-04909 CI

O P I N I O N

No. 2803 — April 11, 2025

Appeal from the Superior Court, Third Judicial District, Anchorage, Jack R. McKenna, Judge.

Appearances: Larry Mikell, *in propria persona*, Wasilla, Appellant. Thomas C. Mooney-Myers, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Terrell, Judges.

Judge ALLARD.

Larry Mikell was convicted, pursuant to a plea agreement, of second-degree murder and sentenced to 65 years to serve.[1] In 2019, the Alaska Parole Board

---

[1]    *Mikell v. State*, 2001 WL 81795, at *1 (Alaska App. Jan. 31, 2001) (unpublished).

denied Mikell discretionary parole and ruled that he could not reapply for discretionary parole for ten years. Mikell filed an application for post-conviction relief challenging that decision. The superior court dismissed the application in response to the State's motion for summary disposition. Mikell now appeals that dismissal. We note that Mikell waived his right to counsel and proceeded *pro se* in the superior court proceedings, and he has chosen to remain *pro se* for this appeal.

Mikell raises three claims on appeal. First, Mikell argues that the superior court's interpretation and application of AS 33.16.100(a)(4) (a factor that the Board must find before granting discretionary parole) was legally incorrect. Second, Mikell argues that AS 33.16.100(h) (a provision that permits the Board to delay a second parole hearing) is legally inapplicable to the facts of his case. Third, Mikell argues that the superior court erred by affirming as not arbitrary the Board's requirement that Mikell serve ten more years before reapplying for parole.

For the reasons explained in this decision, we reject the first two claims. However, we conclude that a remand to the Board is required so that the Board may clarify and, if appropriate, reconsider its ten-year set-off as well as provide guidance to Mikell regarding what programming he should complete to address the Board's concerns.

*Background facts and proceedings*

In 1998, sixteen-year-old Larry Mikell shot a cab driver in the head during an attempted robbery, killing him.[2] Mikell was convicted, pursuant to a plea agreement,

---

[2]  *Id.*

of second-degree murder and sentenced to 65 years to serve.[3] This Court affirmed Mikell's sentence on direct appeal.[4]

After serving one-third of his sentence, Mikell applied for discretionary parole.[5] On October 24, 2019, the Board convened, considered Mikell's application, and denied parole. The recording of the parole hearing is not included in the record of this case.[6] But the Board's subsequent letter to Mikell explaining its decision is contained in the record. In this letter, the Board stated that it denied discretionary parole because releasing Mikell "would diminish the seriousness of the offense" under AS 33.16.100(a)(4), noting "the severity of [his] crime and how much time is enough time when a life is lost." The Board also informed Mikell that he must wait ten years before reapplying for discretionary parole.

Mikell moved for reconsideration of the Board's decision. In a supporting memorandum, Mikell argued, *inter alia*, that the Board's interpretation of AS 33.16.100(a)(4) violated separation of powers principles, and that the Board inadequately explained the basis for its denial under AS 33.16.130(c).[7]

---

[3]     *Id.*

[4]     *Id.* at *1-2.

[5]     *See* former AS 33.16.090(a) (1998) & former AS 33.16.100(d) (1998).

[6]     Because Mikell was *pro se*, the superior court should have informed him how to obtain and file the record of the parole hearing prior to ruling on Mikell's post-conviction relief application, if the court did not do so. *See Larson v. State, Dep't of Corrs.*, 284 P.3d 1, 8 (Alaska 2012) (explaining that "the superior court must 'inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish'" (quoting *Capolicchio v. Levy*, 194 P.3d 373, 378 (Alaska 2008))). However, we conclude that the absence of the record has not prejudiced Mikell on appeal because he is raising only legal arguments with regard to his first two claims and we are remanding on his third claim.

[7]     AS 33.16.130(c) ("[T]he [B]oard shall state the reasons for the denial [of parole], identify all of the factors considered relevant to the denial, and provide a written plan for addressing all of the factors relevant to the denial."); *see also Frank v. State*, 97 P.3d 86, 90 (Alaska App. 2004) (holding that "the Board must describe its reasons [for denial] in

In a second letter responding to Mikell's request for reconsideration, the Board stated that it reviewed Mikell's "entire file," including his "discretionary parole report," "sentencing documents," "the written information provided to [it] prior to the [parole] hearing," and the parole hearing itself. The Board ultimately declined to reconsider its prior decision. The second letter reiterated that releasing Mikell would diminish the seriousness of his crime under AS 33.16.100(a)(4), noting the following circumstances of his offense and its aftermath: the offense was "unprovoked," "senseless," and "callous"; Mikell "knowingly fir[ed], at close range, a deadly shot to the [victim's] head"; he showed "no remorse whatsoever"; and his behaviors after the crime evidenced a "disregard for [his] fellow man, [the victim's] family, the community at large and the laws of society." The second letter also provided a new rationale for denying parole: the Board's uncertainty that Mikell could "live and remain at liberty without violating the conditions imposed by the Board."

Mikell filed a *pro se* application for post-conviction relief challenging the Board's decision. Mikell argued, *inter alia*, that the Board's reasoning and conclusion under AS 33.16.100(a)(4) was erroneous, and that the Board's order requiring him to serve ten more years before reapplying for parole was both arbitrary and inadequately explained under AS 33.16.130(c).

The State moved for summary disposition of Mikell's application, arguing that the Board acted within its discretion when it denied Mikell's application for discretionary parole. The State also argued that the Board acted within its "enormous discretion" when it prohibited Mikell from reapplying for parole for ten years. The superior court agreed and issued an order granting the State's motion.

Regarding the Board's explanation for why Mikell did not satisfy AS 33.16.100(a)(4), the court noted that the Board "emphasized the specific facts of

---

sufficient detail that inmates can understand in what respects they have fallen short . . . so that they can prepare more satisfactory future applications for parole").

Mikell's offense and the callousness to human life that he initially displayed." And regarding the corrective guidance the Board provided Mikell, the court noted that the Board "g[ave] Mikell guidance on what he needs to do to alleviate the Board's concerns, namely to serve more time in custody." The court noted, however, that the Board had not identified which programs would be most likely to help with Mikell's rehabilitation and, therefore, the Board did not provide sufficient guidance to Mikell for any future parole applications. The court nevertheless concluded that these deficiencies did not prejudice Mikell because it concluded that the Board had provided adequate guidance with regard to AS 33.16.100(a)(4) — release of the prisoner on parole would "diminish the seriousness of the crime" — by requiring Mikell to serve ten more years.

This appeal followed.

*The Parole Board did not legally misinterpret AS 33.16.100(a)(4)*

Prisoners who are eligible for discretionary parole under the terms of their sentence become eligible to apply for discretionary parole after serving a statutorily-required portion of their sentence.[8] After an eligible prisoner applies for discretionary parole, the Board considers the application.[9] Under AS 33.16.100(a), the Board may grant discretionary parole to an eligible prisoner if it determines a "reasonable probability exists" that

> (1) the prisoner will live and remain at liberty without violating any laws or conditions imposed by the board;
>
> (2) the prisoner's rehabilitation and reintegration into society will be furthered by release on parole;
>
> (3) the prisoner will not pose a threat of harm to the public if released on parole; and

---

[8]  *See* AS 33.16.090.

[9]  AS 33.16.130.

(4) release of the prisoner on parole would not diminish the seriousness of the crime.[10]

If the Board finds that all four of these criteria are met, it may — but is not required to — grant parole.[11]

On appeal, Mikell challenges the Board's legal interpretation and application of AS 33.16.100(a)(4). More specifically, Mikell argues that the Board erred in its analysis of this factor because it looked to the specific circumstances of the second-degree murder he committed. Instead, Mikell contends that by requiring inmates to serve a portion of their sentence before becoming eligible for discretionary parole, the legislature has already established that the (a)(4) factor was met. That is, Mikell contends that the legislature has already determined that paroling him when he first became eligible would not diminish the seriousness of the crime as a matter of law.

Mikell's interpretation of AS 33.16.100(a)(4) is directly at odds with this Court's recent decision in *Stoneking v. State*.[12] In *Stoneking*, we were called upon to interpret the proper meaning of AS 33.16.100(a)(4). After Stoneking served the requisite portion of his sentence for first-degree murder, he applied for discretionary parole.[13] The Board denied Stoneking's application, finding, *inter alia*, that he did not meet the release criterion in AS 33.16.100(a)(4).[14] In its decision letter, the Board provided specific details about the aggravated circumstances of Stoneking's offense.[15]

---

[10]  AS 33.16.100(a).

[11]  *See id.*; *Stefano v. Dep't of Corrs.*, 539 P.3d 497, 504 (Alaska 2023).

[12]  *Stoneking v. State*, ___ P.3d ___, 2025 WL 940243 (Alaska App. Mar. 28, 2025).

[13]  *Id.* at *3.

[14]  *Id.* at *6.

[15]  *Id.* at *5-6.

However, the Board also made generalized comments that its job was to determine "how much time is enough time" to serve for murder.[16]

We held that the Board's comment about "how much time is enough time" was a misapplication of AS 33.16.100(a)(4).[17] We noted that the legislature, not the Board, is empowered to determine the correct penalty for a given category of offense.[18] Thus, the Board may not deny discretionary parole based on its personal views about the length of time a prisoner should serve for a given category of offense.[19] However, the Board may consider "significantly aggravated or particularly egregious" circumstances of a prisoner's crime when assessing whether release on discretionary parole would "engender disrespect for the law or be incompatible with societal norms."[20]

Accordingly, we reject Mikell's argument on appeal that it was legal error for the Board to consider the specific circumstances of his crime when determining his eligibility for discretionary parole under AS 33.16.100(a)(4).

---

[16]   *Id.* at *6.

[17]   *Id.* at *11.

[18]   *Id.* at *9-10.

[19]   *Id.* at *10-11; *see also King v. N.Y. State Div. of Parole*, 598 N.Y.S.2d 245, 251 (N.Y. App. Div. 1993), *aff'd*, 632 N.E.2d 1277 (N.Y. 1994) ("The role of the Parole Board is not to resentence [the] petitioner according to the personal opinions of its members as to the appropriate penalty for murder, but to determine whether, as of this moment, given all the relevant statutory factors, [the petitioner] should be released.").

[20]   *Stoneking*, 2025 WL 940243, at *11.

*The Parole Board did not err by applying AS 33.16.100(h) to Mikell's case*

Mikell next argues that the statutory provision permitting the Board to delay second and subsequent discretionary parole hearings, AS 33.16.100(h), is legally inapplicable to his case. Alaska Statute 33.16.100(h) provides:

> If the board considers an application for discretionary parole and denies parole because the prisoner does not meet the standards in (a) or (g) of this section, the board may make the prisoner ineligible for further consideration of discretionary parole or require that additional time be served before the prisoner is again eligible for consideration for discretionary parole.[21]

Mikell's case falls squarely within this provision. After serving one-third of his sentence, Mikell applied for discretionary parole. The Board held a parole hearing, denied parole because Mikell did not meet the criteria in AS 33.16.100(a), and concluded that Mikell must wait ten years before reapplying.

On appeal, Mikell argues that AS 33.16.100(h) does not apply to his case because he claims that he met the requirements of AS 33.16.100(a) as a matter of law. Because we disagree that Mikell has met these requirements as a matter of law, we reject this claim of error.

*A remand is required so that the Parole Board can address the ten-year set-off and provide proper guidance to Mikell regarding future programming*

Mikell next argues that the Board's requirement that he serve ten more years before reapplying for discretionary parole was an abuse of discretion because it was unduly arbitrary. In support, Mikell notes that the Board did not explain why it chose ten years, and the Board did not appear to use any objective criteria to reach this number.

---

[21] AS 33.16.100(h).

We agree that a remand for clarification and, if appropriate, reconsideration of the ten-year set-off is required. On remand, the Board should also address the deficiencies in its corrective guidance to Mikell that the superior court identified.

As we already explained, the superior court found that the Board had failed to identify which programs would be most likely to help with Mikell's rehabilitation. The court noted that the Board had made references to Mikell's "issues" in custody as one of the reasons why it found Mikell ineligible for discretionary parole, but the Board provided very little substance as to what those "issues" were, and the Board provided no guidance as to what classes or programs Mikell could take (if any) that would address those issues. The court found that the Board's letter was "unhelpful because it otherwise praises the programs that Mikell has already pursued" without providing "specific guidance" as to what Mikell needs to do to prepare a more satisfactory application for discretionary parole in the future.

The superior court did not remand Mikell's case to the Board to correct these deficiencies because it concluded that, by requiring Mikell to serve ten more years, the Board had provided adequate guidance with regard to their finding under AS 33.16.100(a)(4) ("release of the prisoner on parole would not diminish the seriousness of the crime"). But the Board provided no explanation for why Mikell has to serve an additional ten years before reapplying for discretionary parole, and its selection of ten more years therefore appears arbitrary.

Moreover, as we explained in *Stoneking*, while subsection (a)(4) primarily looks backward to the original offense, a prisoner's rehabilitation remains relevant to the Board's consideration of the seriousness of the crime.[22] That is, whether a prisoner's release on discretionary parole will "engender disrespect for the law or be incompatible with societal norms" will be affected by the prisoner's post-offense conduct, including

---

[22] *See Stoneking*, 2025 WL 940243, at *11.

the extent of their rehabilitation efforts while incarcerated.[23] It is therefore inadequate for the Board to simply direct the prisoner to serve more time without providing additional guidance as to what programming may help ameliorate the Board's concerns regarding the (a)(4) criterion.

In any event, in the letter it issued after reconsideration, the Board also relied on AS 33.16.100(a)(1) (whether "the prisoner will live and remain at liberty without violating any laws or conditions imposed by the board"). It was therefore incumbent on the Board to provide specific guidance to Mikell regarding what steps he should take to address the Board's concerns under subsection (a)(1).

Accordingly, we remand Mikell's case to the Board so that the Board may clarify and, if appropriate, reconsider its ten-year set-off, as well as provide adequate guidance to Mikell regarding what programming he should complete to address the Board's concerns.

*Conclusion*

For the reasons explained in this opinion, we VACATE the superior court's judgment and REMAND this case to the Parole Board for further proceedings consistent with this decision.

---

[23]  *Id.* at *9 n.43.