Robert J. BAUMAN, Judy A. Bauman,
and R.J.W., Appellants,

v.

STATE of Alaska, DIVISION OF FAMI-
LY & YOUTH SERVICES, Rod Caskey,
Intake Supervisor, Dottie Hafler, In-
take Person, Kathy Elitharp, Intake
Person, and Department of Public Safe-
ty, Alaska State Troopers, Steve Heck-
man, State Trooper, and Linden Stacio-
kas, Appellees.

No. S–2572.

Supreme Court of Alaska.

Jan. 27, 1989.

Ronald P. Moroni, Fairbanks, for appel-
lants.

Randy M. Olsen, Asst. Atty. Gen., Fair-
banks, and Grace Berg Schaible, Atty.
Gen., Juneau, for appellees.

Before MATTHEWS, C.J., and
RABINOWITZ, BURKE, COMPTON
and MOORE, JJ.

MOORE, Justice.

Defendants State of Alaska and four
public officials filed a summary judgment
motion in superior court. Plaintiffs Robert
and Judy Bauman and their daughter
R.J.W., appearing pro se, did not oppose
the motion. The superior court granted
summary judgment. The Baumans and
R.J.W. appeal. They argue that (1) they
did not receive fair notice of the require-
ments of summary judgment procedure;
and (2) summary judgment was improper
because material factual issues remained
for trial.

I.

On August 28, 1984, the Fairbanks office
of the Department of Health and Social
Services, Division of Family and Youth Ser-
vices (Department), received an anonymous
phone call through their "hot line," advis-
ing that Robert Bauman was sexually
abusing his stepdaughter R.J.W. The call-
er gave an address for the Baumans' home
in Fox, near Fairbanks. The Department
assigned the case to Sergeant Steve Heck-
man of the state troopers.

In an affidavit, Heckman stated that he
usually interviewed sexual abuse victims

away from their home, since the victim's mother is often antagonistic to the investigation. He usually chose a location with which the victim was familiar and comfortable, such as the victim's school. In this case, he had difficulty locating the family, since R.J.W. was not enrolled at school and the family had moved away from Fox.

Heckman ultimately received information that the Baumans lived in a house near mile ten of the Chena Hot Springs Road. Heckman went to the location intending to confirm that the Baumans lived there. Upon arriving, Heckman saw a face appear at a window. Knowing that he had been seen and worried that, should he leave, the Baumans might intimidate R.J.W. or otherwise inhibit his investigation, Heckman decided to interview the family at once.

R.J.W. answered Heckman's knock on the door. She wore a modest bathrobe. R.J.W. assured Heckman that everything was alright. After staying only a few minutes, Heckman gave her his business card and left. Upon returning to his office, Heckman closed the Bauman file, concluding that the allegations were unfounded.

The Baumans sued, appearing pro se. Their complaint alleged a variety of wrongdoings, including error in acting on an anonymous "hot line" report of sexual abuse, destruction of the interview tape and failure to destroy Heckman's investigation file, slander, improper interviewing of an alleged sexual assault victim, illegal search and seizure, and conspiracy.

On June 5, 1987, all the defendants except Linden Staciokas moved for summary judgment. The movants argued that they were protected by immunity granted by AS 09.50.250; there were no questions of fact; and certain of the Baumans' allegations failed to state a claim. The movants attached Sergeant Heckman's affidavit to their summary judgment memorandum.

The Baumans and R.J.W. did not oppose the motion. On July 9, 1987, the superior court granted summary judgment to all defendants except Staciokas. The court gave no written reasons other than the comment "unopposed" which is handwrit-

ten on the order granting summary judgment.

On July 23, 1987, the Baumans and R.J. W. filed a motion for reconsideration. The court denied the motion several days later. On December 3, 1987, the court entered final judgment in favor of all the defendants except Staciokas. The Baumans and R.J.W. appeal.

## II.

The Baumans and R.J.W. argue that the superior court erred in granting an unopposed motion for summary judgment against them as pro se litigants without first notifying them of the requirements of the summary judgment rules. The Baumans and R.J.W. cite a number of cases that either are not on point, or involve suits brought by prison inmates.

Federal circuits courts have held that prisoners appearing pro se deserve special warnings. *See Moore v. State of Fla.*, 703 F.2d 516, 520 (11th Cir.1983) (local procedural rule requiring opposition to summary judgment motion within ten days did not provide adequate notice of summary judgment procedure to pro se prison inmate; such inmates have limited access to legal materials); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir.1982) (pro se prisoner entitled to receive notice of the consequences of failing to respond to summary judgment motion); *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir.1979) (relying on *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975)); *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C.Cir.1968) ("requirements of the summary judgment rule may not fairly be applied 'with strict literalness' to a prisoner unrepresented by counsel and subject to the 'handicaps ... detention necessarily imposes upon a litigant' ").

On the other hand, the Ninth Circuit, in *Jacobsen v. Filler*, 790 F.2d 1362, 1363–67 (9th Cir.1986), rejected the argument that those holdings should be extended to include pro se litigants who are not prison inmates. The court gave the following reasons for its conclusion: First, outside the context of prisoner litigants, "it is not for the trial court to inject itself into the adver-

sary process on behalf of one class of litigant." *Id.* at 1365. Courts should not save a litigant from his choice of lawyer, including when a litigant chooses himself as legal representative. *Id.* at 1364–65. Second, it would be hard to require courts to warn pro se litigants to file responsive affidavits, without also requiring an explanation of what an affidavit is, which in turn would require outlining the rules of evidence. *Id.* at 1365. This open-ended participation by the court would be difficult to contain. Third, to require such notice would change Federal Rule of Civil Procedure 56, rather than interpret it. *Id.* at 1366. Such a change should be done through "formal amendment" and not "piecemeal adjudication." *Id.*

In *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987), we held that the pleadings of pro se litigants should be held to less stringent standards than those of lawyers. In particular, we stated that "a trial court judge should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish; here Breck should have been advised of the necessity of submitting affidavits to preclude summary judgment, and the possibility of amending her complaint." *Id.*

■ We believe that *Breck* is distinguishable here. In *Breck*, the plaintiff opposed the defendants' motion for summary judgment but failed to attach previously submitted evidence in the form of affidavits. We noted that "[e]ven where affidavits had not been submitted the court still has a duty to consider evidence referred to by the party opposing summary judgment." *Id.* In this case, however, the Baumans failed to submit even a defective motion in opposition to the defendants' motion for summary judgment.

We decline to extend *Breck* to require judges to warn pro se litigants on aspects of procedure when the pro se litigant has failed to at least file a defective pleading. It strikes us as common knowledge that initiating and pursuing a civil lawsuit can be a difficult and complex procedure. The Alaska Rules of Civil Procedure have been promulgated for the specific purpose of giving fair and reasonable notice to all parties of the appropriate procedural standards that should be uniformly applied when any party, including a pro se litigant, seeks relief in the pending action. A pro se litigant who wants to initiate such an action should familiarize himself or herself with the rules of procedure. For the reasons given in *Jacobsen*, we also choose not to extend the protections some courts have afforded pro se prisoners to other pro se litigants. To require a judge to instruct a pro se litigant as to each step in litigating a claim would compromise the court's impartiality in deciding the case by forcing the judge to act as an advocate for one side. We hold that the superior court was under no duty to warn the Baumans and R.J.W. of the necessity of opposing the defendants' motion for summary judgment.

## III.

In the alternative, the Baumans and R.J. W. argue that the court erred in granting the defendants' summary judgment motion, since there were factual issues to go to trial.

■ The proponent of a summary judgment motion has the initial burden of establishing the absence of genuine issues of material fact and his or her right to judgment as a matter of law. *See* Alaska R.Civ.P. 56; *see also Weaver Bros. v. Chappel*, 684 P.2d 123, 126 (Alaska 1984). Once the movant has met that initial burden, "the non-movant is required, in order to prevent summary judgment, to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact[ ] exists." *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n. 32 (Alaska 1978). However, the proponent has no absolute right to summary judgment merely because the opponent fails to respond. *Dome Laboratories v. Farrell*, 599 P.2d 152, 159 n. 24 (Alaska 1979). "[T]he superior court retains some degree of discretion in deciding whether to grant summary judgment in cases where there is no response...." *Id.*

We now address the propriety of summary judgment in favor of each of the three groups of defendants: Sergeant Heckman, the public officials other than Sergeant Heckman, and the State.

### A. *Summary judgment in favor of Heckman*

Qualified immunity may protect a public official from causes of action arising under federal or state law. *See Walt v. State,* 751 P.2d 1345, 1348 (Alaska 1988); *Aspen Exploration Corp. v. Sheffield,* 739 P.2d 150, 157–59 (Alaska 1987). We have stated:

> Under a rule of qualified immunity, a public official is shielded from liability only when discretionary acts within the scope of the official's authority are done in good faith and are not malicious or corrupt.

*Id.* at 158. Similarly, the United States Supreme Court stated:

> Whether an official may prevail in his qualified immunity defense depends upon the objective reasonableness of his conduct as measured by reference to clearly established law.

*Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139, 147 (1984) (quotation marks and brackets deleted).

■ All of Heckman's actions in his investigation appear to be within the scope of his authority and discretionary in nature. In his affidavit, Heckman portrayed his actions as objectively reasonable, undertaken in good faith, not malicious, and not corrupt. Heckman's affidavit satisfied his initial burden of establishing the absence of factual dispute and his entitlement to judgment as a matter of law, based on qualified immunity.[1] Since the Baumans and R.J.W. did not demonstrate that they could produce evidence reasonably tending to dispute Heckman's affidavit, the superior court was justified in granting summary judgment in favor of Heckman.

### B. *Summary judgment in favor of state officials other than Heckman*

The superior court also granted summary judgment in favor of three public officials of the Division of Family and Youth Services: Rod Caskey, Dottie Hafler, and Kathy Elitharp. Their positions, as alleged in the caption of this case, are intake supervisor, intake person, and intake person, respectively. These defendants submitted no affidavits explaining why they were entitled to summary judgment. It would seem that they did not satisfy their initial burden of demonstrating the absence of factual issues and that they were entitled to judgment as a matter of law. However, in this case, the court's grant of summary judgment was proper.

■ Except in the caption, the complaint does not specifically mention Caskey or Elitharp at all. As for Hafler, the complaint mentions her once:

> 32. Said report, written by defendant Dottie Hafler was accepted without witnesses, any real evidence, or probable cause. The accusation was totally untrue and false malicious slander.

Reading the complaint liberally, the only allegation that might be directed at Caskey and Elitharp is that they participated in reporting the anonymous "hot line" tip of sexual abuse. However, reporting all tips is mandated by AS 47.17.025(a), which provides in part:

> Upon receipt from any source of a report of harm to a child from abuse, the [D]epartment [of Health and Social Services] shall notify the Department of Law and investigate the report and, within 72 hours of the receipt of the report, shall provide a written report of its investigation of the harm to a child from abuse to the Department of Law for review.

Thus, reporting the tip was not improper. We conclude that the Baumans and R.J.W. fail to state a claim against Hafler, Caskey,

---

1. Since one of the purposes of immunity is to avoid disruptive litigation that would prevent officials from performing their duties, courts may ordinarily determine whether an official is protected by qualified immunity on summary judgment. See *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982).

and Elitharp. Summary judgment in their favor was proper.

## C. *Summary judgment in favor of the State*

The defendants in this case include two branches of state government: the Division of Family and Youth Services of the Department of Health and Social Services, and the Alaska State Troopers, which is part of the Department of Public Safety. The court granted summary judgment in their favor.

Alaska Statute 09.50.250 provides in pertinent part:

Actionable claims against the state. A person ... having a ... tort claim against the state may bring an action against the state in the superior court.... However, no action may be brought under this section if the claim

(1) is an action for tort, and is based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not the statute or regulation is valid; or is an action for tort, and based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused;

. . . . .

(3) arises out of ... libel, slander....

The Baumans' and R.J.W.'s allegations against the State can roughly be grouped into three categories: (1) charges that state employees wronged the Baumans and R.J.W. in investigating the reported abuse; (2) charges that state policy is flawed; and (3) charges that the State slandered them. The defendants argued in their summary judgment memorandum that the State is immune from the first type of charge under AS 09.50.250(1) (first clause); from the second under AS 09.50.250(1) (second clause)[2]; and from the third under AS 09.50.250(3).

Because the Baumans and R.J.W. did not dispute these legal arguments and because they appear to be meritorious,[3] the superior court was justified in granting summary judgment in favor of the State.[4]

AFFIRMED.

RABINOWITZ, Justice, dissenting.

I disagree with the majority's holding that the superior court "was under no duty to warn the Baumans and R.J.W. of the necessity of opposing the defendants' motion for summary judgment."

In *Breck v. Ulmer*, 745 P.2d 66 (Alaska 1987), we said in part:

We agree with Breck [a *pro se* plaintiff in a civil action, just like Bauman] that the pleadings of *pro se* litigants should be held to less stringent standards than those of lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652, 654 (1972) (per curiam). In this regard we note that several courts have explicitly imposed a duty on the trial judge to advise a pro se litigant of his or her right under the summary judgment rule to file opposing affidavits to defeat a motion for summary judgment. *See Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C.Cir.1968) (per curiam); *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir.1975) (per curiam). Likewise, we believe the trial judge should inform a *pro se* litigant of the proper procedure for the action he or she is obviously attempting to accomplish; *here Breck should*

---

**2.** *See Division of Corrections v. Neakok*, 721 P.2d 1121, 1133 (Alaska 1986) ("decisions that rise to the level of basic planning or policy formulation will be considered discretionary").

**3.** We will not rule on those legal arguments because the Baumans and R.J.W. did not dispute them either in the superior court or in this court.

**4.** In another point on appeal, the Baumans and R.J.W. argue that the superior court erred in denying their motion for reconsideration. However, they do not follow through with this argument in their briefs. They argue nothing about the requirements of Alaska Rule of Civil Procedure 77(m) (setting forth the requirements of motions to reconsider) or the standard this court should apply in reviewing a denial of such a motion. We will not reach this issue. *Cf. Aspen Exploration*, 739 P.2d at 156.

*have been advised of the necessity of submitting affidavits to preclude summary judgment,* and of the possibility of amending her complaint.

*Id.* at 75 (emphasis added). *See also* Note, *An Extension of the Right of Access: The Pro Se Litigant's Right to Notification of the Requirements of the Summary Judgment Rule,* 55 Fordham L.Rev. 1109 (1987) (authored by Joseph M. McLaughlin); *Jacobsen v. Filler,* 790 F.2d 1362, 1367–70 (9th Cir.1986) (Reinhardt, J., dissenting).

In light of the above quoted portion of the *Breck* text, I am not persuaded that *Breck* is distinguishable on the grounds that the Baumans "failed to submit even a defective motion in opposition to the defendants' motion for summary judgment." Nor can I agree that the trial court's impartiality is compromised by a requirement that the court inform a *pro se* litigant of the right under Civil Rule 56 to oppose a summary judgment motion.