Mario **CAPOLICCHIO**, Appellant,

v.

Ken **LEVY**, Ketchikan Police Department, City of Ketchikan, Appellees.

No. S–12475.

Supreme Court of Alaska.

Oct. 16, 2008.

---

Fred W. Triem, Petersburg, for Appellant.

Carmen E. Clark, Ingaldson Maassen & Fitzgerald, P.C., Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

CARPENETI, Justice.

# I. INTRODUCTION

A pro se litigant filed a lawsuit against the manager of a homeless shelter, alleging that the manager discriminated against him when the manager excluded him from the shelter. The litigant also filed a lawsuit against the city and local police department for misconduct and harassment; the two lawsuits were consolidated. The superior court granted the city and police department's motion to dismiss and later granted the shelter manag- er's motion for summary judgment. The plaintiff appeals, arguing that the superior court erred by granting summary judgment in favor of the shelter manager, by accepting a late-filed motion for attorney's fees, and by granting attorney's fees to the shelter man- ager without requiring an itemized billing statement or description of the work per- formed. Because the decision to grant sum- mary judgment was not in error, the motion for attorney's fees was not late, and the failure to require itemized billing was at most harmless error, we affirm the order granting summary judgment and the award of attor- ney's fees.

# II. FACTS AND PROCEEDINGS

## A. Facts

Mario Capolicchio arrived at the Ketchikan homeless shelter, Park Avenue Temporary Home (PATH), on July 20, 2003. The man- ager of the shelter, Ken Levy, informed him of the prohibitions against alcohol consump- tion and misconduct. Capolicchio signed an agreement to abide by shelter rules while he stayed there. The agreement included a warning that any infringement of shelter rules would result in removal from the shel- ter; it stated that "[a]nyone under the influ- ence of alcohol or drugs may be refused entry to the shelter."

Capolicchio stayed at the shelter from July 20 to July 23 without incident. However, according to Levy's affidavit, "when he came to check in on July 24, 2003, it was clear that he had been drinking alcohol. That in itself was a problem, but the real problem was his behavior." Levy stated that Capolicchio be- came angry and violent and "was ranting about a communist take-over." Capolicchio began screaming and yelling "obscenities and threatening remarks." After Levy warned Capolicchio that he could not act that way at the shelter, Capolicchio's behavior continued. Levy felt threatened, so he called the police. When the police arrived, Capolicchio's behav- ior continued to escalate, and, according to Levy, "he became physically combative." The officers arrested him.

### B. Proceedings

Capolicchio, acting pro se, filed two documents with the Ketchikan Superior Court in early June 2004. One, entitled "Motion for Injunction," sought relief for "discrimination/prejudism [sic] by employees-manager Ken Levy, or clients at P.A.T.H." The other, entitled "Motion for Injunction Relief" requested that the court "restrain the Ketchikan City Police Dept. from misconduct and/or harrassment [sic] of an honest, naturalized citizen, said plaintiff: Mario Capolicchio." The clerk's office treated the two documents as complaints and consolidated them into one case. The case was assigned to Superior Court Judge Michael A. Thompson. While the complaints were consolidated, subsequent filings tended to address the claims against the city and the police department, on the one hand, and claims against Levy, on the other, distinctly. Accordingly, the procedural history of the case against the police department and the city is distinguished in this section from the procedural history of the case against Levy.

### 1. Case against the police department and the city

In his complaint, Capolicchio did not identify the specific police conduct that he considered misconduct. He also did not allege any basis for his claim of discrimination, such as race, disability or membership in another protected class, nor did he state that he is a member of a protected class. The Ketchikan Police Department and the City of Ketchikan (Ketchikan) did not answer the complaints, but filed an Alaska Civil Rule 12(b) and 12(c) motion to dismiss. Capolicchio responded to Ketchikan's motion by filing a document requesting an extension of time and a hearing "to determine merit for this case." This document did not fully explain the basis for his claim, but it did state that the last time Capolicchio was in the police station, officers told him that they "were to[o] busy and . . . have things to do." After a series of extensions, Capolicchio eventually responded to Ketchikan's motion to dismiss. Capolicchio's response reiterated that the last time Capolicchio was in the police station he was told that officers were too busy to assist him.

The superior court granted Ketchikan's motion and dismissed Capolicchio's case against the city and the police department. Capolicchio then filed a document entitled "Reply to Dismissal." Noting that the certificate of service accompanying this document included the "Apellate [sic] Court for the state of AK," Judge Thompson issued an order inquiring of Capolicchio whether he wished to stay proceeding against Levy while the dismissal of the case was appealed. Capolicchio replied in the affirmative.

### 2. Case against Levy

Capolicchio's complaint against Levy, like his complaint against the city, did not allege any basis for his claim of discrimination, such as race, disability, or membership in another protected class. Again, he did not state that he is a member of a protected class. In June 2004 Ken Levy, acting pro se, filed a letter with the court in response to Capolicchio's allegations in his "Motion for Injunction." Levy's letter stated, "Mr. Capolicchio was under the influ[e]nce of alcohol when I refused him entry into our shelter. It had nothing to do with race, or religion." In July Capolicchio filed a document with the court requesting a "formal hearing be granted to determine merit for this case and to explic[i]tly instruct the shelter Mng. Mr. Ken Levy to give a reasonable explanation why I have been refused accommodation to the public shelter." In September Capolicchio filed another document with the court describing his claim against Levy:

> Regarding discrimination: Mng. Mr. Kenneth Levy. Ac[t]ually, absolutely and effectively accused me of being under the influence of alcohol, when I was not nor intoxicated, as a pretext for barring me from the PATH, public facility. Previously when the local city government acted as mediator to enter the PATH, Mr. Ken Levy as typical claimed he has no space, the[n] when my name was given he say absolutely no: Reason, it seemed a paradox, I called someone a communist. Next to a religious leader he said: "Thing didn't work!" Then to a local reporter he said: "I'm an alcoholic." This is injustice.

That same day Capolicchio also filed a "Reply to Dismissal," in which he stated that he believed "the local police" discriminated against him "as a newcomer ... only from the continental U.S." This is the only assertion of a basis for discrimination against him in any of the documents Capolicchio filed with the court. In this document he also suggested that he "has some language difficulties," although that is not asserted to have been a reason for the appellees' alleged discrimination. Capolicchio's final filing in this case, before it was dismissed as to all parties for lack of prosecution, was his affirmative response noted above to the superior court's request for clarification as to whether he intended that proceedings against Levy be stayed while he appealed the dismissal of his suit against Ketchikan. In that response, Capolicchio did not assert any basis for Levy's alleged discrimination against him. Capolicchio took no steps to perfect an appeal. No further action appears in the record on Capolicchio's claims against Levy until 2006.

In January 2006 the court clerk's office dismissed the case as the result of the passage of one year with no activity in the file. Capolicchio filed a "motion for continuation and reopen," in which he sought to undo the clerk's action. Judge Thompson ordered the case reinstated to the active list in March.

Levy acquired legal counsel and moved for summary judgment in July 2006. Capolicchio did not respond to the motion for summary judgment, and the superior court did not inform Capolicchio of his right to respond. In August the court granted Levy's motion for summary judgment, "there being no opposition thereto, for reasons stated in Levy's motion." Levy submitted a proposed final judgment approximately two months later. In November the court issued a preliminary "Unopposed Final Judgment" using the form Levy submitted. Levy filed a motion for attorney's fees, an affidavit of counsel concerning fees and costs, and a bill of costs. Capolicchio opposed the motion for attorney's fees. The superior court awarded attorney's fees in the amount of $488.20 and costs in the amount of $198.35, for a total judgment of $686.55.

After the superior court granted summary judgment in favor of Levy, but before final judgment was entered by the court, Capolicchio prematurely filed a notice of appeal.[1] On appeal, Capolicchio is represented by counsel.

## III. STANDARD OF REVIEW

We review an award of summary judgment *de novo*.[2] We will affirm only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[3] When making this determination we draw all reasonable inferences in favor of the non-moving party.[4]

We review a superior court's Civil Rule 82 award of attorney's fees under the abuse of discretion standard, and will disturb the award only if it is manifestly unreasonable.[5]

## IV. DISCUSSION

### A. The Superior Court Had No Duty To Advise Capolicchio To File an Opposition to Levy's Motion for Summary Judgment.

Capolicchio argues that the superior court erred by failing to advise him of the need to

1. After Capolicchio's case against Ketchikan was dismissed, Capolicchio filed two additional documents with the superior court, and apparently mailed the documents to "Apellate [sic] Court for the State of AK." However, Capolicchio did not mail the documents to the city or the police department, or otherwise notify them of any appeal. On appeal, the record reveals that Capolicchio has mailed materials only to counsel for Levy. Ketchikan was not notified of the appeal, so Capolicchio's claims against Ketchikan are waived. *See* Alaska R.App. P. 204(h) ("Papers filed or served in the appeal must be served on all parties, except appellees who have elected not to participate in the action."); *see also Vincent v. State, Commercial Fisheries Entry Comm'n,* 717 P.2d 391, 394 (Alaska 1986) (explaining that a showing of prejudice due to improper filing can prevent hearing of a case on the merits).

2. *Sopko v. Dowell Schlumberger, Inc.,* 21 P.3d 1265, 1269 (Alaska 2001) (citations omitted).

3. *Id.*

4. *Id.*

5. *Walton v. Ramos Aasand & Co.,* 963 P.2d 1042, 1046 n. 3 (Alaska 1998) (citations omitted).

file an opposition to Levy's motion for summary judgment. He argues that under *Breck v. Ulmer*[6] courts hold pro se litigants to a more lenient pleading standard and that the superior court has a duty to warn a pro se litigant before dismissing a case without a trial. He contends the superior court breached that duty when it failed to warn Capolicchio before dismissing his claim on summary judgment. Levy responds that the superior court had no duty to advise Capolicchio of the proper procedures for perfecting an opposition because Capolicchio failed to file any response to the motion for summary judgment. Levy argues that *Bauman v. State, Division of Family & Youth Services*,[7] rather than *Breck*, controls this case.

*Breck* involved a lawsuit by a pro se litigant, Betty Breck, against Juneau Assembly members concerning the bid process for construction of Juneau's municipal parking garage.[8] The assembly members filed a motion for summary judgment, and Breck responded with an opposition and her individual affidavit.[9] The superior court did not inform Breck of any curable deficiency in her response, and granted summary judgment in favor of the assembly members on the basis of legislative immunity.[10] Breck appealed.[11] We held that "pleadings of pro se litigants should be held to less stringent standards than those of lawyers"[12] and that "the trial judge should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish," Breck should have been advised of the necessity of submitting competent affidavits to preclude summary judgment.[13]

Two years later, we decided *Bauman*, which involved a pro se lawsuit by parents and their child concerning a state investigation of alleged sexual abuse.[14] In the superior court, the state filed a motion for summary judgment, which the plaintiffs did not oppose.[15] The superior court granted the state's motion, providing "no written reasons other than the comment 'unopposed' which [was] handwritten on the order granting summary judgment."[16] On appeal, the plaintiffs argued that "the superior court erred in granting an unopposed motion for summary judgment against them as pro se litigants without first notifying them of the requirements of the summary judgment rules."[17] We "decline[d] to extend *Breck* to require judges to warn pro se litigants on aspects of procedure when the pro se litigant has failed to at least file a defective pleading," and held that "the superior court was under no duty to warn the [plaintiffs] of the necessity of opposing the defendants' motion for summary judgment."[18] We focused on the pro se litigant's duty rather than the duty of the superior court judge:

> It strikes us as common knowledge that initiating and pursuing a civil lawsuit can be a difficult and complex procedure. The Alaska Rules of Civil Procedure have been promulgated for the specific purpose of giving fair and reasonable notice to all parties of the appropriate procedural standards that should be uniformly applied when any party, including a pro se litigant, seeks relief in the pending action. A pro se litigant who wants to initiate such an action should familiarize himself or herself with the rules of procedure.... To require

6. 745 P.2d 66 (Alaska 1987).

7. 768 P.2d 1097 (Alaska 1989).

8. 745 P.2d at 67–68.

9. *Id.* at 69, 74–75.

10. *Id.*

11. *Id.* at 69.

12. *Id.* at 75.

13. *Id.* Nevertheless, we then determined that the lower court's failure to advise Breck was harmless because "[t]he evidence which she considers

necessary was before the trial court by reference in her opposition to the summary judgment motion" and that evidence was not sufficient to raise a genuine issue of fact that would preclude summary judgment. *Id.*

14. *Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1097–98 (Alaska 1989).

15. *Id.* at 1098.

16. *Id.*

17. *Id.*

18. *Id.* at 1099.

a judge to instruct a pro se litigant as to each step in litigating a claim would compromise the court's impartiality in deciding the case by forcing the judge to act as an advocate for one side.[19]

■ The present case clearly falls under the *Bauman* rule that the superior court is not required to notify a pro se litigant of his right to file an opposition to a motion for summary judgment where the litigant has filed nothing. Here, as in *Bauman*, the superior court focused partly on the fact that Capolicchio filed no opposition to Levy's summary judgment motion. Had Capolicchio filed a defective opposition, the *Breck* rule would have imposed a requirement on the superior court to notify him of the defect and the means to cure it.[20] However, because Capolicchio filed no opposition at all, he was not entitled to notification of the proper procedure to defend against the summary judgment motion.

■ In sum, under *Bauman*, the superior court did not err in failing to warn Capolicchio of the need to file an opposition to Levy's summary judgment motion.[21]

## B. The Superior Court Did Not Grant Summary Judgment in Favor of Levy on the Sole Basis that Levy's Motion Was Unopposed.

Capolicchio argues that the superior court acted improperly when it granted Levy's motion for summary judgment solely because it was unopposed. However, the superior court's order granting summary judgment states: "Having considered defendant Ken Levy's motion for summary judgment, and there being no opposition thereto, *for reasons stated in Levy's motion* the Court grants summary judgment in favor of Levy and against Mario Capolicchio." (Emphasis added.)

■ According to Civil Rule 56(e), if an adverse party does not respond to a summary judgment motion, summary judgment should be granted against the adverse party "if appropriate." Summary judgment is appropriate if the movant first establishes a prima facia case "showing that there is an absence of a factual dispute on a material fact and that this absence of a dispute constitutes a failure of proof on an essential element." [22] In *Rockstad v. Erikson*, we stated that "a movant does not have a right to summary judgment merely because the non-moving party fails to respond," and "the superior court retains some degree of discretion in deciding whether to grant summary judgment in cases where there is no response to the filing of the summary judgment motion." [23] Thus, while a superior court is not required to grant an unopposed motion for summary judgment, it has discretion to grant such a motion if it determines that the movant has established a prima facie case for summary judgment.

■ The language of the superior court's written order indicates that the court did not grant summary judgment simply because the motion was unopposed. Rather, the court granted summary judgment "for reasons stated in Levy's motion." Levy showed, in his motion for summary judgment, that Capolicchio's various filings failed to present a genuine issue of material fact as to the exis-

19. *Id.* We also recently affirmed a superior court grant of summary judgment in a similar case involving the failure to file an opposition, although our decision rested on the ground "that judgment against [the appellant] should be affirmed based on his failure to appear for trial." *Snyder v. Am. Legion Spenard Post No. 28*, 119 P.3d 996, 1002 (Alaska 2005).

20. *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987).

21. In *Breck*, we concluded that the superior court's failure to advise the pro se litigant was harmless because the evidence sought to be included by the litigant was insufficient to create a genuine issue of material fact. *Id.* Here, even if the superior court had erred, such error would similarly be harmless because Capolicchio failed to assert that Levy discriminated against him based on race, disability, or membership in some other protected class. *See* AS 18.80.210 (prohibiting discrimination based on membership in a protected class). Thus, any error by the superior court in failing to warn Capolicchio of the need to file an opposition would have been harmless.

22. *Bradley v. Klaes*, 181 P.3d 169, 175 (Alaska 2008) (quoting *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007)).

23. 113 P.3d 1215, 1220 (Alaska 2005) (internal citations and quotations omitted).

tence of a valid discrimination claim. Levy pointed out in his motion that "Capolicchio has not alleged, nor are there any [ ] facts to support a finding[,] that he is a member of a protected class and that discrimination occurred because of his status in that class." Capolicchio presented no evidence in the form of a sworn statement, and beyond that deficiency, there is no allegation in his various filings that creates a genuine issue of material fact regarding discrimination.

A summary judgment movant is obligated to point to undisputed facts or admissible evidence establishing a prima facie case entitling the movant to judgment as a matter of law. If the movant does not meet that burden, the movant is not entitled to summary judgment even if the opposing party does nothing.[24] Here, Levy's motion for summary judgment and the accompanying affidavit—coupled with Capolicchio's failure to deny Levy's allegations—established a lack of dispute as to whether Capolicchio violated the conduct rules of the shelter, and as to whether Levy evicted Capolicchio because of that violation. Levy's sworn affidavit affirms that Capolicchio's conduct violations went far beyond allegedly being intoxicated, and included threatening and disruptive behavior and foul language. Those facts entitle Levy to judgment as a matter of law, because Capolicchio did not deny this behavior in any of his filings. Further, he did not assert membership in any protected class that would raise an inquiry into the disparate impact of the conduct rules, such as disability.[25] Because Capolicchio's claim is for injunctive relief, he had the burden of making a "clear showing of probable success on the merits" in the absence of a showing of irreparable harm to him.[26] Having not specifically al-

leged in his filings with the court that he did not violate a conduct rule or that he is a member of a protected class, Capolicchio could not succeed on the merits. Levy's motion for summary judgment was properly granted because Levy established a prima facie case that he did not discriminate against Capolicchio. Thus, the superior court did not err in granting Levy's motion for summary judgment.

### C. The Superior Court's Award of Summary Judgment Did Not Deprive Capolicchio of His Right to Due Process and Trial by Jury.

Capolicchio argues that the summary judgment procedure is unconstitutional as applied to pro se litigants because it deprives them of "their day in court and of their right to trial by jury." However, he cites no cases for the proposition that summary judgment is unconstitutional, nor does he explain how it deprived him of his rights under the due process clause of the fourteenth amendment and the guarantee of the right to jury trial of the seventh amendment of the United States Constitution, or article I, sections 7 (due process) and 16 (trial by jury) of the Alaska Constitution. Thus, Capolicchio has waived this argument.[27]

Even if Capolicchio had adequately briefed his claim, it would still be without merit. In light of its history and use, it is clear that summary judgment is not unconstitutional. The United States Supreme Court has flatly stated that "summary judgment does not violate the Seventh Amendment."[28] Capolicchio's argument that the summary judgment procedure violated his due process rights is equally unpersuasive. We have routinely affirmed use of the summary judgment procedure by the superior

**24.** *B.R. v. State, Dept. of Corrections,* 144 P.3d 431, 433 (Alaska 2006) (citations omitted).

**25.** *See, e.g., Raytheon Co. v. Hernandez,* 540 U.S. 44, 54 n. 7, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) ("Both disparate-treatment and disparate-impact claims are cognizable under the ADA.").

**26.** *State, Div. of Elections v. Metcalfe,* 110 P.3d 976, 978 (Alaska 2005) (citations omitted).

**27.** *See Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) ("where a point is given

only a cursory statement in the argument portion of a brief, the point will not be considered on appeal"); *A.H. v. W.P.,* 896 P.2d 240, 243 (Alaska 1995) (extending *Adamson* rule to case involving pro se litigant).

**28.** *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 336, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (citing *Fidelity & Deposit Co. v. United States,* 187 U.S. 315, 319–21, 23 S.Ct. 120, 47 L.Ed. 194 (1902)).

courts, and have limited the procedure to cases in which the pleadings and evidence show "that there is no genuine issue as to any material fact and that [the moving] party is entitled to a judgment as a matter of law."[29] This standard is adequate to prevent the violation of a party's due process right or right to a jury trial. Thus, the superior court's award of summary judgment did not deprive Capolicchio of his constitutional rights.

### D. The Superior Court Did Not Commit Reversible Error in Awarding Civil Rule 82(b)(2) Attorney's Fees to Levy Without Requiring Itemization of the Work Performed.

The superior court awarded Levy Civil Rule 82(b)(2) attorney's fees in the amount of $488.20, which equals twenty percent of Levy's counsel's stated actual fees ($2,441.00). Capolicchio argues that the fee award should be vacated because Levy's motion was not accompanied by an itemized billing statement or a statement to otherwise establish that the fees sought were reasonable and necessarily incurred. Levy responds that the superior court did not err when it applied the twenty percent schedule set forth in Rule 82(b)(2) to actual attorney's fees.

Rule 82(b)(2) provides:

In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred, and shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred.

We have explained that we "will interfere with the trial court's exercise of discretion under Rule 82 only when there is an abuse of

that discretion," which is established only "where the determination was manifestly unreasonable."[30] Nonetheless, in *Hayes v. Xerox Corp.*, we stated, "when counsel requests attorney's fees, other than based on the schedule in Rule 82(a)(1), accurate records of the hours expended and a brief description of the services reflected by those hours should be submitted."[31] And, in *Marron v. Stromstad*, we held that "where the rule authorizes reasonable actual fees, a court may not award attorney's fees to a party who has not itemized his or her requested fees, when the opposing party has requested such itemization."[32]

Rule 82(b)(2) requires that the fees requested be "reasonable actual attorney's fees which were necessarily incurred." Levy's counsel submitted an affidavit, in which he summarized the basis of the request for attorney's fees: "Our firm spent a total of 14.9 hours defending Ken Levy. 3.8 hours were spent by me, at the rate of $175 per hour, for a cost of $665.00. An additional 11.1 hours was spent by another attorney in our office who billed at the rate of $160 per hour for a cost of $1,776.00. The total actual attorney's fees incurred were, thus, $2,441.00." Capolicchio opposed the motion for attorney's fees, arguing that without itemized time records and billing statements, he could not fairly evaluate whether the fees requested were "reasonable actual attorney's fees which were necessarily incurred." Capolicchio is correct that *Marron* requires an itemized billing statement and that Levy's counsel did not provide one. But here, because the amount of attorney's fees was so low and the hours Levy's counsel expended on defending the case were so minimal, any error in failing to order itemization was harmless: The superior court could consider the fee request to be reasonable per se.[33] Under such circumstance, we will not find

**29.** Alaska R. Civ. P. 56(c); *Moffatt v. Brown,* 751 P.2d 939, 943 (Alaska 1988).

**30.** *Norris v. Gatts,* 738 P.2d 344, 356 (Alaska 1987).

**31.** 718 P.2d 929, 939 (Alaska 1986) (citations omitted).

**32.** 123 P.3d 992, 1014 (Alaska 2005).

**33.** Indeed, requiring a remand to require Levy's counsel to provide itemization would only create more unnecessary costs for all parties.

reversible error in the failure to require itemization.

### E. The Superior Court Did Not Err by Entering Judgment and Awarding Attorney's Fees to Levy Even Though his Request for Judgment Did Not Follow the Timeline Established in Civil Rule 56(c).

 Capolicchio argues that Levy's two-month delay in submitting his proposed judgment should be construed as a waiver of his right to recover attorney's fees, which must be requested within ten days of entry of final judgment. Levy responds that the motion for attorney's fees was timely because he submitted it within ten days of the actual final judgment.

Rule 82(c) states that a motion for attorney's fees "must be filed within 10 days after the date shown in the clerk's certificate of distribution on the judgment.... Failure to move for attorney's fees within 10 days, or such additional time as the court may allow, shall be construed as a waiver of the party's right to recover attorney's fees." Rule 56(c) states: "When the decision adjudicates all unresolved claims as to all parties, the judge shall direct the appropriate party to file a proposed final judgment. The proposed judgment must be filed within 20 days of service of the decision...."

The superior court granted summary judgment in favor of Levy on August 20, 2006, but the court did not direct any party to prepare a final judgment form. Levy submitted a proposed final judgment on October 24. The court issued the final judgment in favor of Levy on November 13. Levy then filed for attorney's fees on November 22, within the ten-day deadline of Rule 82(c).

Capolicchio's argument that Levy's proposed judgment was not filed within twenty days of the summary judgment order overlooks the fact that the court never requested that Levy file a proposed judgment as well as the fact that the superior court has wide discretion in awarding attorney's fees. The court accepted the proposed judgment and distributed the judgment on November 13. Thus, it was well within the court's discretion to grant attorney's fees pursuant to the mo-

tion filed less than ten days after November 13.

## V. CONCLUSION

Because (1) the superior court was under no duty to inform Capolicchio of the need to file an opposition to the summary judgment motion, (2) the superior court did not grant summary judgment merely because the motion was unopposed, and (3) summary judgment did not unconstitutionally deprive Capolicchio of his rights to due process and jury trial, we AFFIRM the superior court's order granting summary judgment in favor of Levy. Because the motion for attorney's fees was timely and the superior court's decision not to require an itemized billing statement was at most harmless error, we AFFIRM the award of attorney's fees.