*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RAND JOSEPH HOOKS, | ) | |
| | ) | Supreme Court No. S-16521 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-16-05824 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ALASKA USA FEDERAL CREDIT | ) | |
| UNION and DENNIS ALBERT, | ) | No. 7227 – March 2, 2018 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: Rand Joseph Hooks, pro se, Anchorage, Appellant. Richard Ullstrom, RCO Legal-Alaska, Inc., Anchorage, for Appellee Alaska USA Federal Credit Union. Mario L. Bird, Ross, Miner & Bird, PC, Anchorage, for Appellee Dennis Albert.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

## I. INTRODUCTION

A borrower defaulted on a loan, leading to a non-judicial foreclosure of a deed of trust on his property. He filed suit against the property's new owner and the credit union that initiated the foreclosure, arguing the foreclosure and the transactions

preceding it were fraudulent and invalid. The superior court granted summary judgment for the defendants. We affirm the superior court's conclusion that the borrower failed to demonstrate an issue of material fact concerning the loan origination and the foreclosure. We also reject the borrower's claims that the superior court judge was biased and that the borrower's right to due process was violated.

## II.    FACTS AND PROCEEDINGS

In December 2002 Rand Joseph Hooks Jr. obtained a loan from Homestate Mortgage Company LLC (Homestate) to refinance an existing loan secured by his property. Hooks signed a promissory note evidencing an obligation to repay the loan and a deed of trust giving Homestate a security interest in the property. The day the loan closed, Homestate sold the promissory note and the beneficial interest in the deed of trust to Alaska USA Federal Credit Union (Alaska USA). A Homestate agent signed and transferred the note and also signed a document assigning the beneficial interest to Alaska USA.

In 2015 the loan went into default. Alaska USA referred the defaulted loan and the deed of trust for foreclosure, and through the statutory nonjudicial deed of trust foreclosure process, the property was sold to Dennis Albert. Hooks remained in the property despite the sale, and he filed a pro se complaint against Albert and Alaska USA. Hooks alleged that Alaska USA had committed fraud, that it did not possess the document needed to initiate a foreclosure, and that banks and credit unions are legally prohibited from owning property. Hooks also claimed that he, not Albert, owned the property.

Alaska USA and Albert filed motions for summary judgment in July 2016. After Hooks failed to respond to the motions in a timely manner, the superior court issued a "Notice Regarding Motion for Summary Judgment" that described the requirements for opposing summary judgment and extended the deadline for responding

to the motions. However, Hooks did not file an opposition before the new deadline. When Hooks failed to appear at the August 22 trial call, the court took the trial off the calendar and instead held oral argument on the summary judgment motions on the date originally set for trial. At the court's request, Alaska USA sent Hooks a letter explaining the change.

The oral argument took place on August 25, and all parties were present. Before presenting his arguments, Hooks told the court he had not received the defendants' summary judgment motions or the court's notice explaining how to oppose summary judgment; he also said he had not known about the trial call. Hooks explained he had not opened the court's emails because he had not recognized the email address the court had used to send them.

At the oral argument, Hooks contested the legality of the loan origination and the foreclosure on several grounds. He argued that the promissory note he signed during the loan origination process was itself an asset equal in value to the loan he received, that any debt was paid in full when he transferred this asset to the lender, and that he had never received a loan at all. Hooks argued the lender had fraudulently concealed this information, causing him to mistakenly make payments for a number of years. He also argued that there were technical defects in the deed of trust and that Alaska USA had failed to adequately validate the debt upon request.

After oral argument the superior court verified that Hooks had copies of the summary judgment motions and the notice describing how to oppose a motion. The court gave him 15 days to file a written opposition. Hooks filed an opposition on September 2 and a second opposition on September 23. In his oppositions Hooks presented several of the same arguments he had made during oral argument. He also asserted that the loan constituted ultra vires activity and that Alaska USA did not possess the note when the foreclosure was initiated. Alaska USA's and Albert's replies argued

that the loan origination and foreclosure were valid and that Hooks's factual assertions were not based on personal knowledge as required under Alaska Civil Rule 56(e).

On September 30 the court entered an order granting the defendants' motions for summary judgment.[1] The court concluded that there was no issue of material fact regarding the existence of a loan and a lien on the property, that Alaska USA was entitled to enforce the promissory note through foreclosure, and that Hooks's arguments that the loan was ultra vires and had been paid off by the promissory note were groundless. The court also held Albert was a bona fide purchaser entitled to possess the property and recover a money judgment from Hooks to compensate for lost rent, and it ordered Hooks to vacate the property. Hooks now appeals arguing that: (1) summary judgment was inappropriate; (2) the superior court was biased; and (3) the superior court violated his due process rights.

## III. DISCUSSION

### A. Summary Judgment

During the superior court proceedings, Hooks argued the foreclosure sale was void because the underlying debt was settled, unenforceable, or nonexistent; the deed of trust was deficient; and Alaska USA lacked the authority to foreclose. "We review grants of summary judgment de novo"[2] and will affirm when "the evidence in the

---

[1] The court appears to have reviewed only Hooks' September 2 opposition. The September 23 opposition was filed after the deadline the court established during oral argument.

[2] *Thomas v. Archer*, 384 P.3d 791, 795 (Alaska 2016) (quoting *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014)).

record presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[3]

Hooks attacks the debt on three closely related grounds. First, he argues that the debt was satisfied in full when he transferred the promissory note to Homestate. He claims his signature imbued the note with a value equal to the value of the loan itself, so after Homestate took possession of the note no further payments were required. Second, he argues Homestate loaned him "credit" rather than "money," as evidenced by the fact he did not personally receive the amount loaned. Hooks claims that the National Bank Act does not authorize Homestate to lend credit[4] and that the loan was therefore ultra vires.[5] Lastly, he argues he never received a loan at all, meaning the promissory note is void for lack of consideration.

Hooks's claims appear to be premised on two "interrelated and overlapping" legal theories, which other courts have characterized as the "vapor money" theory and the "unlawful money" theory.[6] In *McLaughlin v. CitiMortgage, Inc.*, a federal district court analyzed both theories in detail:

> The essence of the "vapor money" theory is that promissory notes (and similar instruments) are the equivalent

---

[3]     *Id.* (quoting *Copper River Sch. Dist. v. Traw*, 9 P.3d 280, 283 (Alaska 2000)).

[4]     *See* 12 U.S.C. § 24 (2012) (setting forth powers of national banks).

[5]     *See First Nat'l Bank of Tallapoosa v. Monroe*, 69 S.E. 1123 (Ga. 1911)*; Howard & Foster Co. v. Citizens' Nat'l Bank of Union*, 130 S.E. 758, 759 (S.C. 1925) ("[A] national bank . . . , being limited in its powers and capacity, cannot lend its credit by guaranteeing the debt of another. All such contracts, entered into by its officers, are ultra vires . . . .").

[6]     *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 209 (D. Conn. 2010).

of "money" that citizens literally "create" with their signatures. . . . Bolstering this argument (at least for its adherents) is the fact that once received, banks typically deposit promissory notes into their own accounts and list them as assets. . . .

At this point in the argument, plaintiffs relying on the vapor money theory typically introduce an additional wrinkle: whereas they gave the banks valuable "money" (in the form of a promissory note), the banks gave them something that is essentially worthless: "mere" credit . . . . As allegedly established by the "unlawful money" theory, issuing credit violates the Constitution[] . . . .

This "fact" has at least two clear benefits to the []borrower . . . . First, it means that the bank-lender gave essentially no consideration, and risked nothing, in making the purported loan, rendering the transaction void (or at least voidable) under general principles of contract law.

. . . [S]econd[,] . . . the []borrower actually comes out ahead in the transaction — after all, she is the only one who gave anything of value, and it would constitute unjust enrichment for the bank to "keep" the value of what the []borrower gave it.[7]

Hooks's suit deviates from this archetype in a single respect: he argues the National Bank Act, rather than the United States Constitution, barred Homestate from issuing credit. This argument is untenable; it rests on a misreading of cases interpreting

---

[7]     *Id.* at 212-13 (emphasis omitted) (citations omitted).

the Act[8] and a misapplication of the holdings of those cases to a transaction involving Homestate and Alaska USA — neither of which is governed by the Act.[9]

The vapor money and unlawful money theories "have been repeatedly rejected by every court to consider the issue,"[10] and we reject them as well. If loans operated as Hooks claims they do, there would be no need for loans and no incentive to provide them. The vapor money and unlawful money theories find no support in our case law, and Hooks's contention the note itself satisfied the debt is irreconcilable with our statutes governing notes taken in exchange for an obligation.[11] Furthermore, we have indicated the transfer of money to a third party — what Hooks characterizes as a loan of mere "credit" — can serve as a valid basis for an enforceable loan.[12] Hooks's vapor

---

[8] *See Sharpe v. Wells Fargo Home Mortg.*, No. 1:12-CV-04292-CC-GGB, 2013 WL 12109445, at *4 (N.D. Ga. Apr. 4, 2013) ("Even assuming that those cases remain good law, they . . . merely stand for the proposition that a national bank cannot extend its credit to guarantee a debt owed by another."), *report and recommendation adopted*, No. 1:12-CV-04292-CC, 2013 WL 12106955 (N.D. Ga. July 15, 2013).

[9] *See Colorado ex rel. Salazar v. Ace Cash Express, Inc.*, 188 F. Supp. 2d 1282, 1284 (D. Colo. 2002) (explaining that the National Bank Act "regulates national banks and only national banks, which can be identified by the word 'national' in [their] name[s]" (quoting *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 687 (E.D. Pa. 1973))); *Financial Institution Lists*, OFFICE OF THE COMPTROLLER OF THE CURRENCY (Nov. 30, 2017), https://www.occ.treas.gov/topics/licensing/national-banks-fed-savin gs-assoc-lists/index-active-bank-lists.html (listing all national banks).

[10] *Demmler v. Bank One NA*, No. 2:05-CV-322, 2006 WL 640499, at *4 (S.D. Ohio Mar. 9, 2006); *see also McLaughlin*, 726 F. Supp. 2d at 214 (listing cases).

[11] *See* AS 45.03.310(b)(2) ("[I]n the case of a note, suspension of [an] obligation continues until dishonor of the note or until it is paid; payment of the note results in discharge of the obligation to the extent of the payment.").

[12] *See Johnson v. Schaub*, 867 P.2d 812, 816-17 (Alaska 1994).

-7-                                                                    **7227**

money and unlawful money arguments present no genuine issue of material fact;[13] the superior court correctly concluded they are without merit.

Hooks's remaining arguments allege various technical deficiencies in both the loan origination process and the foreclosure proceeding. These arguments are similarly unavailing. Hooks has abandoned most of his arguments related to the loan origination by not raising them on appeal.[14] The only such argument he has arguably preserved — that the deed of trust was invalid because Homestate's agent did not sign it during the origination process — is meritless; our statutes governing conveyances of interests in land[15] and deeds of trust[16] do not indicate a deed of trust must be signed by a lender in order to be valid.[17]

---

[13] In the superior court, Hooks pointed to a settlement statement indicating the loan was paid "By/For Borrower" as evidence that he — not Homestate — paid off the prior loan on the property. Hooks's interpretation of this document is "too incredible to be believed by reasonable minds" and thus does not create a genuine issue of material fact. *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014) (quoting *Wilson v. Pollet*, 416 P.2d 381, 384 (Alaska 1966)). The document clearly describes a refinancing loan offered by Homestate. Homestate lent money to Hooks to pay off the prior loan on the property. The document would not exist in the absence of this refinancing loan.

[14] *See Wasserman v. Bartholomew*, 38 P.3d 1162, 1171 (Alaska 2002); *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001). Similarly, Hooks's complaint alleged that the foreclosure was invalid because credit unions and banks "cannot own property" and "cannot sell what they do not own." This argument has also not been raised on appeal and is thus abandoned.

[15] AS 34.15.010-.350.

[16] AS 34.20.070-.135.

[17] *See* AS 34.15.010(a) ("A conveyance of land, or of an estate or interest in land, may be made by deed, signed and sealed by the person *from* whom the estate or

(continued...)

Hooks challenges the foreclosure itself by arguing Alaska USA did not possess the promissory note when it initiated the foreclosure and was thus not entitled to enforce it,[18] and by asserting the debt was never "validated." Alaska USA presented an affidavit indicating it did possess the note, and — in contrast to Alaska USA's affiant — Hooks has not demonstrated that his claim to the contrary is "made on personal knowledge" or that he "is competent to testify to the matter[]."[19] Hooks's second argument — that the debt was not validated — is not developed beyond that bare assertion; Hooks does not provide any support for this contention or explain the implications of the alleged deficiency. "Even a pro se litigant . . . must cite authority and provide a legal theory,"[20] and we conclude that Hooks has not done so here. Hooks's remaining arguments are presented for the first time on appeal, and we hold that they have been waived.[21]

---

[17]     (...continued)
interest is intended to pass, who is of lawful age, or by the lawful agent or attorney of the person . . . ." (emphasis added)).

[18]     *See* AS 45.03.301.

[19]     Alaska R. Civ. P. 56(e). Hooks complains Alaska USA "never submitted the original 'note' with the 'wet ink signature.' " But he does not raise a genuine question as to the validity of the note or provide any other support for his argument that Alaska USA needed to present the original. *See Kirby v. O'Dens*, 673 F. App'x 880, 884 (10th Cir. 2016), *cert. denied*, 138 S. Ct. 265 (2017).

[20]     *Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017) (omission in original) (quoting *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1063 (Alaska 2005)); *see also id.* ("[A] pro se litigant's briefing must allow his or her opponent and this court to discern the pro se's legal argument." (quoting *Casciola*, 120 P.3d at 1063)).

[21]     *See id*. at 1169-70 (citing *O'Callaghan v. State*, 826 P.2d 1132, 1133 n.1 (Alaska 1992)).

Hooks has failed to demonstrate any issue of material fact concerning his debt or Alaska USA's entitlement to enforce that debt by requesting the trustee to initiate a nonjudicial foreclosure. We conclude the superior court correctly granted summary judgment in favor of the defendants.

## B.   Bias

Hooks argues the superior court's conduct during and after the missed trial call, legal conclusions, and use of supposedly demeaning language demonstrated judicial bias. Hooks did not raise this claim in the trial proceeding, but we elect to review it "[i]n light of [Hooks's] status as a pro se litigant."[22] We have not determined what standard of review should apply to unpreserved bias claims, but have noted the "choices seem to be de novo review and abuse of discretion review."[23] However, "the choice is irrelevant here, because we would reach the same conclusion under either standard."[24]

The requirements for establishing judicial bias are exacting. Litigants cannot rely solely on "adverse rulings" as evidence of bias;[25] they must point to specific actions, words, or aspects of the proceeding that show the court was not impartial.[26] Furthermore, litigants alleging bias must prove "the judge formed an opinion . . . from

---

[22]   *Michael M. v. Catherine T.*, No. S-16121, 2016 WL 6134804, at *9 (Alaska Oct. 19, 2016).

[23]   *Greenway v. Heathcott*, 294 P.3d 1056, 1062-63 (Alaska 2013).

[24]   *Id.* at 1063.

[25]   *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015) (quoting *Khalsa v. Chose*, 261 P.3d 367, 376 (Alaska 2011)).

[26]   *See Williams v. Williams*, 252 P.3d 998, 1010 (Alaska 2011); *Tillmon v. Tillmon*, 189 P.3d 1022, 1027 n.13 (Alaska 2008); *Ward v. Urling*, 167 P.3d 48, 57-58 (Alaska 2007).

extrajudicial sources, resulting in an opinion other than on the merits."[27] Bias that arises from "knowledge . . . properly and necessarily acquired in the course of the proceedings" does not have an extrajudicial source.[28] In other words, bias stemming from "the facts adduced or the events occurring at trial" will rarely support a judicial bias claim.[29]

We conclude Hooks's bias claim does not satisfy these stringent requirements. Hooks advances few examples of judicial behavior demonstrating bias, and those that he does discuss are unconvincing. He alleges no extrajudicial source of bias, and neither the evidence of bias he presents nor our review of the record suggests the superior court's interactions with Hooks were influenced by anything other than "the facts adduced [and] the events occurring at trial."[30] Moreover, we note the court went to great lengths to ensure Hooks had an opportunity to respond to the defendants' summary judgment motions: it extended filing deadlines twice, provided an explanation of how to file an opposition, and elected to schedule oral argument even though the parties had not requested it. In light of the court's "exemplary efforts in instructing and advising" Hooks,[31] the absence of any compelling evidence of bias, and Hooks's failure

---

[27]    *Williams*, 252 P.3d at 1010.

[28]    *Hanson v. Hanson*, 36 P.3d 1181, 1184 (Alaska 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)).

[29]    *Id.* (quoting *Liteky*, 510 U.S. at 551). An opinion that "is so extreme as to display clear inability to render fair judgment" can evince judicial bias even when it arises from knowledge gained during a proceeding. *Id.* (quoting *Liteky*, 510 U.S. at 551). This exception is rarely applied, *see Loranger v. Stierheim*, 10 F.3d 776, 780 (11th Cir. 1994), and we conclude that it is inapplicable here.

[30]    *Hanson*, 36 P.3d at 1184 (quoting *Liteky*, 510 U.S. at 551).

[31]    *Olivit v. City & Borough of Juneau*, 171 P.3d 1137, 1147 (Alaska 2007).

to allege bias stemming from an extrajudicial source, we hold that Hooks's contentions of bias are unwarranted.

### C.  Due Process

Hooks claims the superior court violated his procedural due process rights[32] by providing him with insufficient notice of the trial call and by not holding a trial.  He notes that the court sent him notice of the trial call in an email rather than by letter, and that the court used "an unfamiliar email, . . . and not . . . the email address that was given [to him] in Court."  He further argues the superior court deprived him of a "fair opportunity to present his case through trial call and trial."  "Whether the superior court violated a party's due process rights is a question of law, which we review de novo."[33]

Hooks essentially argues the superior court's decision to resolve his case on the summary judgment motions deprived him of his day in court.  However, as we explained in *Capolicchio v. Levy*,[34] summary judgment "is adequate to prevent the violation of a party's due process right," as it is applied only in cases "in which the pleadings and evidence show 'that there is no genuine issue as to any material fact and that [the moving] party is entitled to a judgment as a matter of law.' "[35]

Hooks was afforded a full opportunity to contest the defendants' motions for summary judgment.  At the conclusion of oral argument, the superior court allowed

---

[32]     While Hooks refers to "due process" generally without distinguishing between substantive and procedural due process, his claim is based on deficiencies in the superior court's procedures.

[33]     *Easley v. Easley*, 394 P.3d 517, 520 (Alaska 2017) (quoting *McCarrey v. Kaylor*, 301 P.3d 559, 563 (Alaska 2013)).

[34]     194 P.3d 373 (Alaska 2008).

[35]     *Id.* at 381 (alteration in original) (quoting Alaska R. Civ. P. 56(c)); *see also Foondle v. O'Brien*, 346 P.3d 970, 976 n.36 (Alaska 2015).

Hooks to file a written opposition to the motions for summary judgment, and gave him 15 days to do so. The court ensured Hooks had copies of the summary judgment motions and the court's order explaining how to oppose a motion for summary judgment. And Hooks did in fact file an opposition before the deadline, which the court considered before granting the defendants' motions. This level of process was, at a minimum, equivalent to the level of process this court found satisfactory in *Capolicchio*.[36]

Hooks claims that inadequate notice of the impending trial call deprived him of "a fair opportunity to present his case through trial call." However, a trial call is an administrative conference, not a hearing during which the merits of a case are "present[ed]" and "judged."[37] The only practical consequence of Hooks's absence at the trial call appears to have been the court's decision to take the trial off the calendar. As *Capolicchio* established, a court's decision to resolve a case on motions for summary judgment does not violate a litigant's right to due process.[38] We thus conclude Hooks's due process claim is without merit.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's judgment.

---

[36] In fact Hooks was afforded an opportunity to participate in the summary judgment procedure more fully than the pro se litigant in *Capolicchio*. The pro se litigant in that case received no guidance on how to file an opposition, and did not do so. *Capolicchio*, 194 P.3d at 377-79. In contrast the superior court's assistance and decision to extend the filing deadline meant Hooks had a full and fresh opportunity to file an opposition after the argument.

[37] *Matson v. State, Commercial Fisheries Entry Comm'n*, 785 P.2d 1200, 1206 (Alaska 1990).

[38] *Capolicchio*, 194 P.3d at 380-81.