NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHAEL S. BERRY, | ) | |
| | ) | Supreme Court No. S-17232 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-09-01965 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| APRIL L. BERRY, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1750 – December 11, 2019 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Michael S. Berry, pro se, Marquand, Missouri, Appellant. April L. Berry, pro se, Fairbanks, Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carney, Justice, not participating.]

I. **INTRODUCTION**

A father appeals the superior court's denial of his motion to modify child custody. He argues that the court abused its discretion and violated his constitutional right to parent by finding that there was no substantial change in circumstances justifying modification of custody and that modification of custody was not in the children's best interests. He challenges several of the court's factual findings and argues that the court

---

\* Entered under Alaska Appellate Rule 214.

was biased against him. Finally, he argues that the court abused its discretion in revising certain logistical details of visitation.

We conclude that the father's constitutional arguments are waived because they were not raised in the superior court. We also conclude that the superior court did not clearly err or abuse its discretion when it decided that the evidence failed to demonstrate a substantial change of circumstances justifying a modification of custody. We see no judicial bias and no abuse of discretion in the revisions to visitation. We therefore affirm the order denying modification of custody.

## II.    FACTS AND PROCEEDINGS

Michael and April Berry were married in November 2004 and have two children, E. and A., now aged 13 and 11, respectively. The couple divorced in August 2010. The superior court awarded April sole legal and primary physical custody of the children; Michael was given unsupervised visitation one evening a week and one overnight visit every other weekend.

Within a year Michael's military service required that he move out of state. In August 2011 the court modified the original custody order to reflect these changed circumstances. April retained sole legal and primary physical custody, but Michael's visitation was changed to a multi-week trip every summer and a two-week trip at Christmas, with Christmas Day alternating between the parents.

In February 2018 Michael moved for another modification of custody. He alleged a "substantial change in circumstances that justifies modification" based on the passage of time; he noted that the children, who were two and four years old when the 2011 order was entered, were now nine and eleven, "old enough . . . to clearly express preference and provide some input regarding custody issues." He also asserted that modification was justified by "changes in both parent[s'] lives," including April's "patterns of behavior . . . that are contrary to the best interest[s] of the children." He

alleged that April left the children home alone too much, that she limited his telephone contact and access to information, and that the children now preferred to live with him. He requested sole legal and primary physical custody, with April having visitation in the summer and Christmas holidays — the opposite of the existing arrangement.

In her response, April agreed that the children had matured and that both parents' lives had changed, but she disputed Michael's allegations that she was behaving in ways that harmed the children. She asked that custody remain largely as it was, though she asked that the extended school-year visit be changed from Christmas to spring break and that the parties be required to firm up travel dates and ticket purchases well in advance of travel.

The court held an evidentiary hearing in June 2018 to address both the alleged change in circumstances and the children's best interests. At the start of the hearing the parents agreed to share legal custody, and the court accepted their stipulation: "[S]o that will be the order of the Court, and we can move on to the [physical] custody and visitation." Michael and April then testified, and the court admitted exhibits including years of emails and texts between the parents, an initial intake assessment of E. for mental health counseling, and the child custody investigator's report of her interviews with E. and A.

In a written order following trial, the superior court denied Michael's motion to modify physical or legal custody, finding both that there was no substantial change in circumstances affecting the welfare of the children and that modification would not be in the children's best interests. The court found that the children preferred the existing arrangement and that April still had "a superior ability to meet the children's physical, emotional, and social needs."

The court also declined to modify the visitation schedule except in one respect: "Because the children and parents will benefit from more precise orders

regarding transportation expenses," the court ordered that "notice of all travel dates is to be provided to the other parent at least 90 days prior to the start of visitation and that all tickets are to be purchased at least 60 days prior to the start of visitation."

Michael moved for reconsideration, which the court denied. Addressing its rejection of the parties' stipulation to joint legal custody, the court explained "that the parties do not cooperate or communicate well enough to share legal custody" and that shared legal custody was "not in the children's best interest[s] [because] [i]t would only lead to more conflict in the children's li[ves] and only make delivering medical and educational services to the children more difficult."

Michael appeals.

## III. STANDARD OF REVIEW

"We review a trial court's child custody modification decision deferentially, reversing the decision only when the lower court abused its discretion or when its controlling findings of fact were clearly erroneous."[1] "This 'broad discretion' applies to the determination whether there has been 'a substantial change in circumstances affecting the child.' "[2] "Factual findings are clearly erroneous if a review of the record leaves us 'with the definite and firm conviction that the superior court has made a mistake.' "[3]

---

[1]     *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016) (quoting *McLane v. Paul*, 189 P.3d 1039, 1042 (Alaska 2008)).

[2]     *Georgette S.B. v. Scott B.*, 433 P.3d 1165, 1168 (Alaska 2018) (quoting *Heather W. v. Rudy R.*, 274 P.3d 478, 482 (Alaska 2012)).

[3]     *Collier*, 377 P.3d at 20 (quoting *William P. v. Taunya P.*, 258 P.3d 812, 814 (Alaska 2011)).

"We review de novo the question of whether a judge appears biased, which is assessed under an objective standard."[4]

## IV. DISCUSSION

### A. Michael Waived The Argument That Courts Cannot Constitutionally Rely On Reports Of Court-Employed Child Custody Investigators.

A week before trial, the court-appointed custody investigator submitted a report to the court consisting of her summary of interviews with E. and A. At trial Michael suggested that the court call the investigator to testify, saying he had "about three questions for her myself." When informed that the parties had not requested the investigator's attendance, the court tried to reach her but discovered she was traveling.[5] The court advised the parties, "We have the report . . . if you have just a few questions. . . . Perhaps you can by argument and inference make your points." Michael responded, "That's fine, Your Honor," and, "[T]hat's what I was going to say, Your Honor."

The court accordingly accepted the investigator's report as evidence and invited the parties to rely on or respond to it in their testimony and arguments. Much of Michael's testimony focused on the investigator's interview summaries by contending that E.'s answers to questions showed April's overbearing influence.

Michael's first argument on appeal is that a trial court cannot rely on evidence provided by a court-employed child custody investigator without violating the constitutional principle of separation of powers, because such investigators "exercise

---

[4] *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018) (quoting *Wells v. Barile*, 358 P.3d 583, 588 (Alaska 2015)).

[5] The investigator's report advised the court that she would be attending a conference and would "be unable to testify if needed" during most of the week trial was scheduled to occur.

quasi-judicial power, are controlled by, and are accountable to members of the Judicial Branch" while "performing non-judicial investigative functions." But Michael raised no constitutional objections to the investigator's report at trial; in fact, as noted above, he explicitly agreed to its admission and then challenged only the reliability of the reported interviews. In his motion to reconsider he challenged the weight the court gave to the report and reiterated his concern about its substance.

"We will not ordinarily consider issues unless they were raised in the trial court."[6] Because Michael did not raise a constitutional objection to the investigator's report until appeal, the argument is waived.

**B.     The Superior Court Did Not Err By Failing To Honor Alleged Stipulations Regarding Custody.**

Under AS 25.20.110(a), "[a]n award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child." The burden is on the moving party to "prove a substantial change in circumstances as a threshold matter."[7] Only if the moving party meets this threshold does the court go on to analyze the best interests of the child using the factors in AS 25.24.150(c).

Michael asserts that the parties stipulated both to "significant changes in circumstance . . . which warranted modification of the current [physical] custody order" and to joint legal custody. He argues that the court acted unlawfully by disregarding the parties' stipulations because both parties are fit parents and it is "presum[ed] that fit

---

[6]     *Reid v. Williams*, 964 P.2d 453, 456 (Alaska 1998). The standard applies to unrepresented parties. *See Karen L. v. State Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 953 P.2d 871, 880 n.13 (Alaska 1998) (concluding that pro se plaintiff waived constitutional arguments when she failed to "substantively raise" them in superior court).

[7]     *McLane v. Paul*, 189 P.3d 1039, 1043 (Alaska 2008).

parents act in their children's best interests."[8]   But our case law rejects such a presumption in these circumstances.  Although stipulations are ordinarily enforceable as contracts "absent fraud, duress, or concealment of other facts showing the agreement was not made voluntarily and with full understanding," these ordinary rules of contract interpretation do not apply "when the subject matter of the agreement is child custody"; in those cases, "the agreement must also meet the best interests of the children."[9]

This conclusion does not infringe upon Michael's constitutional right to parent, as he argues.  Both parents have this fundamental right.[10]  But inherent in a child custody dispute between fit parents is the recognition that their rights are not absolute once they have invoked the court's jurisdiction to help them settle their dispute.[11]  The superior court did not err by considering whether a modification of custody would be in the children's best interests regardless of any stipulations by the parties.

**C.    The Superior Court Did Not Err By Finding No Substantial Change In Circumstances Justifying A Modification Of Physical Custody.**

The superior court concluded that "the evidence failed to establish the changed circumstances" that Michael alleged.  Michael contends that this ignores the parties' stipulation to a change in circumstances; because he is unrepresented, we

---

[8]    *See Ross v. Bauman*, 353 P.3d 816, 827 (Alaska 2015).

[9]    *Crane v. Crane*, 986 P.2d 881, 885 (Alaska 1999).

[10]    *Dennis O. v. Stephanie O.*, 393 P.3d 401, 407 (Alaska 2017) (noting that "the right to the care and custody of one's own child is a fundamental right recognized by both the federal and state constitutions" (quoting *J.M.R. v. S.T.R.*, 15 P.3d 253, 257 (Alaska 2001))).

[11]    *See Sacharow v. Sacharow*, 826 A.2d 710, 721 (N.J. 2003) ("[B]y seeking a divorce and invoking the jurisdiction of the [court], each party assented to the possibility that there will be some curtailment of what would otherwise be the ordinary rights concomitant to parenthood.").

interpret his brief liberally as also arguing that the court's conclusion was unsupported by the evidence.[12]  Neither argument has merit.

### 1.    The parties did not agree to modify physical custody.

First, the record does not support Michael's contention that the parties stipulated to a change in circumstances that would justify a modification of custody. April agreed with his allegations that the children had "physically grown and . . . matured" and that "both parent[s'] lives [had] changed."  But she explicitly denied any change in either party's parenting abilities.  And she did not agree that the changes she did acknowledge were substantial enough to justify modification; she argued expressly in her response to Michael's modification motion that it was "in the best interest[s] of [the children] for the current physical and legal custody to remain the same."  Although she agreed at trial to a modification of legal custody, the only changes to physical custody she advocated were to the visitation schedule.  The superior court cannot have erred by failing to rely on a stipulation that did not exist.

Nor can we accept that a finding of substantial change of circumstances was required by the facts April did agree to — that the children were seven years older and both parents' lives had seen some changes.  "A change in circumstances is unlikely to be substantial enough to 'overcome our deep reluctance to shuttle children back and forth between parents' unless the change affects the children's welfare and 'reflect[s] more than mere passage of time.' "[13]  While April necessarily agreed that time had passed since the existing custody order was entered in 2011, she did not stipulate to any changes in circumstances that indisputably "affect[ed] the children's welfare."

---

[12]     *See Price v. Eastham*, 128 P.3d 725, 732 (Alaska 2006).

[13]     *Collier v. Harris*, 377 P.3d 15, 22 (Alaska 2016) (quoting *Hope P. v. Flynn G.*, 355 P.3d 559, 565 (Alaska 2015)).

## 2. The superior court did not clearly err or abuse its discretion in finding that there was no substantial change of circumstances.

In Michael's motion to modify custody, he alleged two changes in circumstances that he contended were substantial enough to justify a change: (1) the passage of time, because "the children are now old enough (9 and almost 12 years old) to clearly express preference and provide some input regarding custody issues"; and (2) "patterns of behavior established by the mother . . . that are contrary to the best interest[s] of the children." The passage of time by itself is insufficient to qualify as a substantial change, as noted above. The children's preferences should be considered when they become "of sufficient age and capacity to form a preference,"[14] but this is a question for the best interests analysis; we have never held that a change in a child's preference alone is a substantial change in circumstances satisfying the threshold step in the modification analysis.

In any event, the court found that E. "has an express preference to remain in the primary custody of her mother," and while "A. has no express preference," she "has expressed happiness with the current circumstances." Michael does not challenge these factual findings on appeal. The court did not abuse its discretion by rejecting the passage-of-time argument for a substantial change in circumstances.

As for the alleged "patterns of behavior" on April's part that were "contrary to the best interest[s] of the children," Michael testified primarily about two issues: (1) April's alleged failure to cooperate with regard to his communications and visits with the children, and (2) an alleged degradation in April's ability to care for the children, which she demonstrated by saying derogatory things about Michael and by regularly leaving the children home alone. The court's order denying modification addressed the parties'

---

[14] AS 25.24.150(c)(3).

poor communication and its effect on the children's welfare, but it laid most of the blame on Michael's "disrespectful and demeaning conduct." This had been an issue at the time of the divorce, too; the original custody orders gave April sole legal and primary physical custody based in part on the court's finding that "[t]he father intimidates, humiliates, and coerces the mother," directly impacting the children and making them "visibly distressed." In 2010 the court had found that "[t]he parties have a demonstrated inability [to] communicate" and "are not capable of exercising shared legal custody." We see no clear error in the court's finding that this aspect of the parties' relationship had not substantially changed by 2018.

The court's order denying modification did not address Michael's other allegations, from which we infer that the court did not find them significant. The court asked Michael whether he had any evidence to support his allegation that April was saying derogatory things about him in front of the children; he agreed that the only evidence he had was "inferences from . . . emails" between the parents. As for leaving the children home alone, April testified that it occurred regularly for about two hours in the morning, after she left for work and before the school bus arrived, and for one or two hours after school before she returned home from work. April testified that she worked ten minutes away, that her sister-in-law and parents lived nearby, and that E. was "now responsible enough to babysit as long as mom's just a phone call away." April conceded that the arrangement was "not optimal" but testified that it was the best she could do given work and school schedules. In light of this testimony, we cannot say that the court abused its discretion by failing to find a substantial change of circumstances based on a change in April's ability to care for the children.

**D.  The Superior Court Did Not Err By Declining To Modify Legal Custody.**

The parties did stipulate to joint legal custody, as Michael asserts, and the

court accepted their stipulation, saying it would "be the order of the court." But the court's later written decision left legal custody as it was — solely with April — reasoning that "shared legal custody is not in the children's best interest[s]." The court explained "that the parties do not cooperate or communicate well enough to share legal custody, as evidenced by the five volume custody file and the parties' filings since the close of evidence on the most recent motion." The court concluded that shared legal custody "would only lead to more conflict in the children's li[ves] and only make delivering medical and educational services to the children more difficult."

Michael does not allege that the court's factual findings — that the parties had trouble cooperating and communicating about their children's welfare — were clearly erroneous. Indeed, the parents' lack of cooperation was one of Michael's primary arguments in support of a substantial change in circumstances. His motion alleged that April had "a history of not providing the father with any medical, educational, or other information about the children," and his opening statement at trial alleged "an undisputable pattern of sustain[ed] . . . noncooperation." Much of the evidence at trial concerned the parties' difficult communications; at one point the court, while considering a ream of emails, texts, and other correspondence between the parents, observed that the custody dispute "permeated every aspect of [Michael's] communications with the mother and the children." And Michael agreed with the court's suggestion that April's "noncooperation . . . in coordinating custody and visitation" was one of his primary arguments for why custody should be changed.

"We have repeatedly observed that '[s]ustained noncooperation between the spouses is grounds for denying joint custody, because lack of cooperation hinders

good communication in the best interests of the child.' "[15]  As noted above, the court could not accept the parties' stipulation to joint legal custody once it found that the stipulated modification would be contrary to the children's best interests.[16]  We see no clear error in the findings that support the superior court's determination that joint legal custody would not serve the children's best interests.

Michael also argues, however, that he was prejudiced by the court's acceptance of the parties' stipulation at the beginning of trial because he saw no need to present further evidence on the stipulated issue.  But Michael does not point to any evidence he failed to present in reliance on the court's initial order.  As noted above, the parties' noncooperation was one of Michael's major focuses at trial, though he saw the issue as relevant to April's fitness to parent rather than determinative of legal custody, as the court ultimately concluded.  The court was entitled to go where the parties' testimony led, regardless of their purpose in testifying.  Here the evidence of the children's best interests led the court to change its mind about legal custody.  Michael does not persuade us that this unfairly prejudiced his ability to present his case.

**E.     The Challenged Factual Findings Are Not Clearly Erroneous.**

Having determined that Michael failed to meet his threshold burden of demonstrating a substantial change in circumstances that could justify a modification of custody, the superior court went on to decide that a change in custody would not be in the children's best interests.  Because we find no error in the court's decision on the threshold issue, we do not need to review its best interests determination.  However,

---

[15]     *Collier*, 377 P.3d at 21 (quoting *T.M.C. v. S.A.C.*, 858 P.2d 315, 319 (Alaska 1993)).

[16]     *See Crane v. Crane*, 986 P.2d 881, 885 (Alaska 1999) (explaining that "when the subject matter of the agreement is child custody, the agreement must also meet the best interests of the children").

some of the court's factual findings about best interests may also be relevant to its conclusion that there was no degradation in April's ability to care for the children. We therefore consider Michael's argument that the court erred in several of its factual findings.

Michael first challenges the court's finding that "[t]he children have special emotional needs . . . rooted in the conflict between the parents." Michael argues that this finding violated his constitutional rights, as well as those of April and the children, because "special emotional needs" is a mental health diagnosis the court is not qualified to make "without any supporting evidence from qualified licensed (State recognized) medical/mental health professionals."

The factual extent of the children's "emotional needs," and how they can best be accommodated in a custody decision, is something the superior court is required to consider under AS 25.24.150(c).[17] From the order's context in this case, it is evident that the court labeled the children's needs "special" not because it was diagnosing a mental health condition but because the custody dispute was causing them to have emotional needs beyond those normal to children of their age. This was essentially undisputed; both parents testified extensively about the children's anxiety issues and need for counseling. One of Michael's express concerns about April's parenting was that E.'s mental health issues were more severe than her counselor could handle and that she should be seeing a psychiatrist instead. The court's finding that the children had "special emotional needs" was thus not clearly erroneous.

Michael also alleges that the court "establish[ed] [a] presumption that the children's current counselor is the only person qualified to meet their medical/mental

---

[17]    The first best interests factor under AS 25.24.150(c) is "the physical, emotional, mental, religious, and social needs of the child."

health needs," such that he could only fulfill the counseling mandate of the custody order if he moved back to Fairbanks. But this misstates the court's order. The court did find that "[a] change in custody to the father would increase the children's anxiety and, at the same time, deprive them of their counselor." But the court did not find that no other counselor could fill the role; it simply recognized the benefits of the existing counseling relationship and addressed how change would affect the children's emotional well-being, as it was required to do. The court's findings on this issue are not clearly erroneous.

Michael also challenges the court's finding that the parents' conflict "is driven by" Michael. The court accepted into evidence years of texts and emails that Michael submitted as exhibits; after reviewing them, the court remarked to Michael that "the complaints, the criticisms, and the enmeshing of the custody dispute into ordinary facets of life are all your own emails, your own doing." We have reviewed the exhibits and conclude that the court did not clearly err in its assessment of their general tenor. And to the extent the parties disagree about the nature of their relationship, identifying the driver of the conflict required the court to evaluate their testimony; these questions of credibility were for the trial court to decide.[18] Based on this record, the court's finding that the conflict is driven by Michael is not clearly erroneous.

Michael also challenges the court's finding that "[a] change in custody to the father would increase the children's anxiety." Supporting this finding were the court's earlier well-supported findings that the conflict is driven by Michael and is a source of anxiety for the children. April testified that the children's anxiety was especially acute in the context of visitation. Again, we see no clear error.

---

[18]     *See Saffir v. Wheeler*, 436 P.3d 1009, 1015 (Alaska 2019) (quoting *Silvan v. Alcina*, 105 P.3d 117, 122 (Alaska 2005)).

Michael also argues that the court erred by failing to make a factual finding about one of his primary contentions: that April interfered with his visitation and his relationship with the children. "A trial court is under no obligation to make findings on every factual assertion raised by the parties, provided that the court has 'resolved each critical factual dispute.' "[19] Given the court's well-supported finding that the conflict is driven primarily by Michael, the court's order is adequate for our review, and we see no error.

### F.     The Superior Court Did Not Demonstrate Judicial Bias.

Michael makes two arguments alleging judicial bias: first, that the superior court "interfer[ed] with the presentation of material evidence" and "utiliz[ed] leading judicial questioning to dictate the direction and nature of the trial" in a manner favoring April; and second, that the court exhibited its bias in the weighing of the best interests factors. Neither argument has merit.

" 'In order to prove a claim of judicial bias,' a party must show that the judge 'formed an opinion of [the party] from extrajudicial sources.' "[20] "Bias that arises from 'knowledge . . . properly and necessarily acquired in the course of the proceedings' does not have an extrajudicial source. In other words, bias stemming from 'the facts adduced or the events occurring at trial' will rarely support a judicial bias claim."[21] We

---

[19]     *Berry v. Berry*, 277 P.3d 771, 779 (Alaska 2012) (quoting *Urban Dev. Co. v. Dekreon*, 526 P.2d 325, 328 (Alaska 1974)).

[20]     *Id.* at 774 (quoting *Peterson v. Ek*, 93 P.3d 458, 467 (Alaska 2004)); *see also United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.").

[21]     *Hooks v. Alaska USA Fed. Credit Union*, 413 P.3d 1192, 1197-98 (Alaska (continued...)

have recognized that "judicial bias may also arise during the course of judicial proceedings if 'a judicial officer hears, learns, or does something intrajudicially so prejudicial that further participation would be unfair.' "[22] But impermissible bias cannot "be inferred merely from adverse rulings."[23]

Michael does not allege that the trial judge was influenced against him by anything other than the judge's knowledge of the parties gained through the course of the custody proceedings. He argues, however, that the judge's questions showed concern for April and displeasure with Michael, and that the judge sometimes appeared frustrated by Michael's testimony. But a judge's "expressions of impatience, dissatisfaction, annoyance and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" do not establish judicial bias.[24] Overall, it appears to us that the judge's questions of both parties helped focus their testimony on the factual disputes and legal issues the judge was required to decide. Applying an objective standard of review,[25] we conclude that there was no disqualifying judicial bias.

---

[21]     (...continued)
2018) (alteration in original) (citation omitted) (quoting *Hanson v. Hanson*, 36 P.3d 1181, 1184 (Alaska 2001)).

[22]     *Downs v. Downs*, 440 P.3d 294, 300 (Alaska 2019) (quoting *Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018) (Winfree, J., concurring in part and dissenting in part)).

[23]     *Id.* at 299-300 (quoting *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015).

[24]     *Hanson*, 36 P.3d at 1184 (alteration in original) (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).

[25]     *See Downs*, 440 P.3d at 297.

**G.** **The Superior Court Did Not Abuse Its Discretion By Requiring Advance Notice And Ticket Purchases For Visitation.**

Michael argues that the superior court abused its discretion when it modified the custody order to require specific periods of advance notice and advance ticket purchases for summer and holiday visitation. April had requested the changes. For summer April proposed that Michael be required to identify the "vacation start date and [purchase] tickets . . . for the trip down . . . no later than the start of spring break (mid-March)"; she would secure the "end date and tickets for the return trip . . . no later than the end of the school year in May." For the Christmas holiday, she asked that "tickets . . . be secured no later than 15 October." April alleged that delays in defining the travel dates had in the past complicated her ability to purchase the tickets necessary to accompany the girls. The court adopted this aspect of April's request, finding that it was "in the children's and parties' best interest[s] if notice of all travel dates is provided to the other parent at least 90 days prior to the start of visitation and that all tickets are purchased at least 60 days prior to the start of visitation."

Michael argues that this order is an abuse of discretion because the court impermissibly "elevated [April's] interests above that of the children." He argues that the court increased his financial burden because "the average best time to buy airline tickets to achieve best pricing is 47 days prior to travel," and he argues that the order gives April a "judicial basis by which she can attempt to deny the children's visitation with [him]" if he misses the 90-day deadline.

The superior court has broad discretion in its custody and visitation decisions.[26] The court heard evidence about how the parents' problems in communicating complicated the scheduling of visitation, causing stress for everyone.

---

[26]     *Pasley v. Pasley*, 442 P.3d 738, 744-45 (Alaska 2019).

Imposing notice and advance-purchase requirements was a reasonable response to the issue and well within the court's discretion.

Michael also argues, however, that the visitation changes violated his due process rights because he lacked the opportunity to address them. Due process requires "an opportunity to be heard in court at a meaningful time and in a meaningful manner."[27] April raised the advance-notice and ticket purchases issue in her response to Michael's motion to modify custody, filed four months before the evidentiary hearing. Michael was thus aware of the issue and had the opportunity to address it both in writing — he filed a reply to April's response but did not address the issue — and orally at the hearing. We see no violation of due process.

## V.    CONCLUSION

We AFFIRM the trial court's decision on custody in its entirety.

---

[27]    *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 353 (Alaska 1988).